**-FILED-**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

FEB 1 7 2017

At_____M
ROBERT N. TRGOVICH, Clerk
U.S. DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

**2 . 1 7 C V      7 7**

CRAIG CUNNINGHAM, Pro-se       )
                                )
   *Plaintiff*                  )
                                ) CIVIL ACTION NO.:
v.                              )
                                )

Foresters Financial holding Company, Inc., Foresters Financial Services, Inc., Octavia Pugh, Gil Swets, Mike Samaroo, Mahendra Samaroo, America Insurance Group, LLC, Oracle Senior Insurance Group, Inc., Jason Gsoell, Insurance Professionals of America, Inc., Angela Harris aka Angela Roach, VIPCO Advisors, Inc., Jay Politi, Apptical Corp., United Life Associates, LLC, Andre Docos, Glea Gsoell, Pinnacle Senior Insurance Group Corp., Nationwide Senior Marketing, Inc., I click advanced Marketing Company Katie Boling  )

   *Defendants.*

## Plaintiff's Original complaint

1. The Plaintiff in this case is Craig Cunningham, a natural person and has a mailing address of 5543 Edmondson Pike, ste 248, Nashville, TN 37211

2. Foresters Financial Services, Inc. is a Tennessee corporation that can be served via registered agent United States Corporation Company, 2908 Poston Ave., Nashville, TN 37203-1312.

3. Octavia Pugh is a Tennessee licensed insurance agent who can be served at 7207 Laurel Creek Dr., Stockbridge, GA 30281.

4. Foresters Financial Holding Company, Inc.,  is a Delaware corporation that can be served via Registered Agent: United States Corporation Company, 2711 Centerville Road, ste 400 Wilmington, DE 19808.

5. Gilbert Swets is a natural person and Tennessee licensed insurance agent who can

be served at 8486 Magnolia St., St. John Indiana, 46373.

6.  Apptical Corp is a Florida Corporation that can be served via registered agent and corporate officer, Paul Klimek, 2255 Glades Road, Ste 324A, Boca Raton, FL 33431.

7.  Michael Samaroo is a corporate officer of America Insurance Group, LLC and can be served at 11560 Claymont Circle, Windmere, FL 34786 or 11312 Shandon Park Way, Windermere, FL 34786 or 9508 Lake Hugh Dr., Gotha, FL 34734.

8.  Mahendra Samaroo is a natural person who can be served at 9508 Lake Hugh Dr., Gotha, FL 34734 or 385 Centerpointe, Cir, Altamonte Springs, FL 32701.

9.  America Insurance Group LLC is a Florida corporation that can be served via Registered Agent: Mahendra Samaroo, 385 Centerpointe Circle, ste 1333 Altamonte Springs, FL 32701 or Manager Michael Samaroo, 11560 Claymont Circle, Windermere, FL 34786.

10. Oracle Senior Insurance Group, Inc., is a Florida corporation that can be served via Registered Agent, Jason Gsoell, 108 Candlewick, Ct., Sanford, FL 32771 or 108 Candlewick Court, Sanford, FL 32771 or 104 Amberglow Court, Debary, FL 32713

11. Pinnacle Senior Insurance Group Corp. is a Florida corporation that can be served via Registered Agent, Glea Gsoell, 104 Amberglow CT., Debary, FL 32713 or 195 International Parkway, ste 200, Lake Mary, FL 32713.

12. Nationwide Senior Marketing, Inc. is a Florida corporation that can be served via Registered Agent: Jason Gsoell, 910 Market Promenade Ave., Lake Mary, FL 32746 or 7025 CR 46A 1071-319 or via corporate officers Jason Gsoell, 910

Market Promenade Ave., Lake Mary, FL 32746 or Katie Boling 1707

BridgeWater Dr., Lake Mary, FL 32746.

13. Katie Boling is a natural person wo can be served at 1707 BridgeWater Dr., Lake

Mary, FL 32746.

14. Glea Gsoell is a natural person who can be served at 104 Amberglow Ct., Debary,

FL 32713 or 195 International Parkway, ste 200, Lake Mary, FL 32713.

15. Jason Gsoell is a natural person who can be served at 910 Market Promenade

Ave., Lake Mary, FL 32746 or 1909 Edgebrook Cir., apt 203, Sanford, FL 32771

or 104 Amberglow Ct., Debary, FL 32713 or 7025 CR 46A, ste 1071-319, Lake

Mary, FL 32746.

16. Insurance Professionals of America, Inc., is a Florida corporation that can be

served via Registered Agent: Paul Harris 6570 Anchor Loop # 204, Bradenton,

FL 34212 or PO bo 20823, Bradenton, FL 34204 or 1943 Morril St., Sarasota, FL

34236 or PO Box 1006 Ellenton, FL 34222.

17. Angela Harris, aka Angela Roach is the sole corporate officer of Insurance

Professionals of America, Inc., and can be served at PO Box 20823, Bradenton,

FL 34204 or 6109 100th Ave. E. Parrish, FL 34219.

18. VIPCO Advisors Inc. is a Texas Corporation that can be served via Registered

Agent: James Lowe 3880 Parkwood Blvd., ste 603, Frisco, Tx 75034 or 4712

Voyager Dr., Firsco, Tx 75034 or corporate officer James Stanley, 1702 Manor

Garden Curve, Greenville, Tx 75041.

19. Jay Politi is a natural person and can be served at 7124 Rockland Dr., Charlotte,

NC 28213 or 805 Love Bird Ln, Little Elm, Tx 75068 or 2305 S. Custer Rd., APt

430, McKinney, Tx 75070.

20. I click advanced Marketing Company is a North Carolina corporation that can be
    served via Registered Agent Jay Politi, at 7124 Rockland Dr., Charlotte, NC
    28213 or 805 Love Bird Ln, Little Elm, Tx 75068 or 2305 S. Custer Rd., APt 430,
    McKinney, Tx 75070.

21. United Life Associates, LLC is a New Hampshire corporation that can be served
    via Registered Agent: Jason Craven, Esq, 740 Chestnut Street, Manchester, NH
    03104 or at 855 Hanover St., PMB 116, Manchester, NH 03104

22. Andrew Decos is the sole corporate officer of United Life Associates, LLC and
    can be served at 39 West 5th Street, Oswego, NY 13126.

### Jurisdiction

23.  Jurisdiction of this court arises as the acts happened in this county.

24. Venue in this District is proper in that the defendants transact business here, and
    the acts and transactions occurred here. Personal jurisdiction is apparent as the
    defendants are making calls from the state of Indiana for the purpose of soliciting
    Tennessee residents to purchase life insurance and engage Indiana and Tennessee
    licensed insurance agents to sell policies.

### Nature of the Action

25. This case involves a scheme by Defendant's  Foresters Financial holding
    Company, Inc. and Foresters Financial Services, Inc ("Foresters") (by and through
    their agent co-defendant's: America Insurance Group, LLC, Oracle Senior
    Insurance Group, Inc., Jason Gsoell, Insurance Professionals of America, Inc.,
    Angela Harris, VIPCO Associates, Jay Politi, Apptical, United Life Associates,

LLC, Andre Docos, Glea Gsoell, Pinnacle Senior Insurance Group Corp.,
Nationwide Senior Marketing, Inc.) to market their services through use of pre-
recorded messages in violation of the Telephone Consumer Protection Act, 47
U.S.C. § 227 *et seq*. (hereinafter referred to as the "TCPA").

26. As described more fully below, the defendant insurance companies have issued a
high volume of insurance quotes – and made substantial sales of products and
services – derived through illegal telemarketing calls placed by their co-
defendants.

27. Foresters both delegated its marketing duties to the co-defendants and ratified the
conduct of each and every Co-defendant by accepting the referrals and sales
generated by the illegal calls on behalf of Foresters. Foresters also actively
participated in the telemarketing calls through the actions of its agents.  Together,
these Defendants contacted, and/or caused to be contacted on their behalf,
Plaintiff without their prior express written consent within the meaning of the
TCPA.

28. This Court has personal jurisdiction over Foresters because, as the companies are
licensed to and do conduct the business of insurance in the State of Tennessee,
they have established minimum contacts showing they purposefully availed
themselves to the resources and protection of the State of Tennessee This Court
has personal jurisdiction over each and every co-defendant because the conduct at
issue in this case occurred, among other locations, in Tennessee.

29. This Court has personal jurisdiction over the individual defendants because their
conduct at issue in this case occurred, among other locations, in Tennessee,

including his involvement in the pre-recorded telemarketing calls to the Plaintiff.

This Court also has personal jurisdiction over the individual defendants because:

a. The individual defendants are 100% owner of their respective corporations;

b. The individual defendants had direct participation in the telemarketing calls that are the subject of this lawsuit;

c. The individual defendants are subject to personal liability as described below.

30. At all times material to this complaint, the individual defendants owned, controlled, or was a corporate officer of their respective corporations, and directed its telemarketing practices.

31. The individual defendants are also individually liable for the telemarketing campaign that is the subject of this complaint pursuant to 47 U.S.C. § 217, which states:

In construing and enforcing the provisions of this chapter, the act, omission, or failure of any officer, agent, or other person acting for or employed by any common carrier or user, acting within the scope of his employment, shall in every case be also deemed to be the act, omission, or failure of such carrier or user as well as that of the person.

18. The individual defendants directly committed the wrongful acts contained in this Complaint.

19. The individual defendants also authorized the telemarketing campaign performed on behalf of Foresters.

**THE TELEPHONE CONSUMER PROTECTION ACT OF 1991 (TCPA), 47 U.S.C.**

**§ 227**

21. In 1991, Congress enacted the TCPA to regulate the explosive growth of the

telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

22. Through the TCPA, Congress outlawed telemarketing via unsolicited automated or pre-recorded telephone calls ("robocalls"), finding:

*[R]esidential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy.*

*Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call[,] . . . is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.*

32. On January 4, 2008, the FCC released a Declaratory Ruling wherein it confirmed that *"a company on whose behalf a telephone solicitation is made bears the responsibility for any violations." Id.* (specifically recognizing "on behalf of" liability in the context of a an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. 227(b)).

24. The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See* FCC Declaratory Ruling, Memorandum and Order, 10 FCC Rcd. 12391, 12397 (¶ 13) (1995).

25. The co-defendants made the autodialed and prerecorded message calls described herein "on behalf of" Foresters within the meaning of the 2008 FCC Declaratory Ruling.

33. On May 9, 2013, the FCC released a Declaratory Ruling reaffirming that a corporation or other entity that contracts out its telephone marketing *"may be held*

> *vicariously liable under federal common law principles of agency for violations of*
>
> *. . . section 227(b) . . . that are committed by third-party telemarketers."*[1]

27. More specifically, the May 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer *"has apparent (if not actual) authority"* to make the calls. 28 F.C.C.R. at 6586 (¶ 34).

28. The FCC has rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id.* at n.107.

34. The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

*[A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the*

*telemarketer to cease that conduct.*

28 F.C.C.R. at 6592 (¶ 46).

30. Foresters are legally responsible for ensuring that the co-defendants complied with the TCPA, even if Foresters did not themselves make the calls.

31. Foresters knew that the telemarketers have violated the TCPA on Foresters' behalf and failed to take effective steps within their power to force the telemarketers to cease that conduct. Finally, the May 2013 FCC Ruling states that called parties may obtain *"evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." Id.* at 6592-93 (¶ 46). Moreover, evidence of circumstances pointing to apparent authority on behalf of the telemarketer *"should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." Id.* at 6593 (¶ 46

### The Defendants' Marketing Scheme

40. Foresters relies on a series of third parties ("Foresters agents") to promote its goods or services. In fact, if an individual wanted to purchase Foresters products, the Foresters website advises" *You can purchase Foresters quality insurance products through a network of independent life insurance agents. Our sales and marketing staff will be happy to recommend a friendly insurance agent in your area who can assist you.*

*If you are not a Foresters member and are interested in purchasing a Foresters product, please fill out the form below to have an Agent contact you. "*

**Foresters maintain interim control over its agents' actions, both as to telemarketing and other activities.**

43. Foresters maintains the right to control the content of their agents' advertising.

44. An example of how Foresters maintains the right to control their agents advertising is by:

a. Forester's auditors have the right to review, monitor or oversee any activity related to the business of soliciting insurance applications for them

b. Foresters also requires its agents to maintain an insurance policy insuring Foresters for the actions of the agents.

45. Foresters exercised all of these rights during the course of their relationship with each of the co-defendants.

**Vicarious Liability Under the FCC's Order**

46. The Federal Communication Commission concurs that sellers such as Foresters may not avoid liability by outsourcing telemarketing:

*"Allowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers(or law enforcement agencies) would be required to sue each marketer*

*separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may*

*have thousands of 'independent' marketers, suing one or a few of them is unlikely to*

*make a substantive difference for consumer privacy."*

*In re Joint Pet. Filed by Dish Network, LLC*, CG Docket No. 11-50, 2013 WL 1934349, ¶

37 (FCC May 9, 2013) (internal citations omitted).

47. Under the standards outlined in the FCC's order and by other Courts interpreting that

Order, Foresters is liable to the Plaintiff under the following theories:

**a. Direct Liability**

**b. Actual Authority**

**c. Ratification**

**d. Apparent Authority**

**Direct Liability**

Foresters actively participated in the telemarketing calls that are the subject of this case.

49. The calls to the Plaintiff is an example of how. Although the co-defendants made the

calls and took the Plaintiff's information, Foresters itself participated in the call by

issuing a quote for insurance.

50. The Plaintiff received a quote from Foresters and was offered insurance. Additionally,

the Plaintiff was sent letters directly from Foresters regarding the insurance quotes and

insurance from Foresters.

52. It is the purpose of a call, rather than what is said, that matters for TCPA liability.

*Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913 (9th Cir. 2012).

53. Each call that the co-defendants placed, regardless of how "far" the call recipient

permitted the sales pitch to go, was intended by all parties involved to result in sales of Foresters' products and services.

54. Defendant Foresters issued quotations for insurance wholly derived from the co-defendant's calls, including the ones to the Plaintiff.

55. Foresters also issued insurance policies to persons who accepted such quotations based on the illegal calls from the co-defendants.

## Actual Authority

56. With regard to torts committed by an agent, tort committed by an agent, the Restatement of Agency provides: § 7.04 Agent Acts With Actual Authority
A principal is subject to liability to a third party harmed by an agent's conduct when the agent's conduct is within the scope of the agent's actual authority or ratified by the principal; and

(1) the agent's conduct is tortious, or

(2) the agent's conduct, if that of the principal, would subject the principal to tort liability.

*See* RESTATEMENT (THIRD) OF AGENCY § 7.04 cmt. d(2) (2006).

57. The purpose of Foresters' agents is to serve Foresters by soliciting applications for insurance from consumers on behalf of Foresters
Indeed, the co-defendants did this through the pre-recorded telemarketing alleged in this Complaint.

59. Foresters also directed the quality, timing, geographic location and volume of co-defendant's applicants that it sent to them.

## Ratification

60. In the alternative, Foresters repeatedly ratified the co-defendant's illegal marketing scheme by knowingly accepting the benefits of the co-defendant's activities when they accepted applications and customers from them.

61. Since at least April of 2013, Foresters has been on notice that agents were using pre-recorded telemarketing calls to generate customers for Foresters.

62. Upon information and belief, Foresters and their agents were aware of co-defendant's marketing scheme well back to April of 2013 and that thet co-defendants was making calls using an "artificial or prerecorded voice" to generate customers for Foresters.

63. Foresters has continued to do business with telemarketers that are breaking the law to send customers to Foresters for years.

64. In participating in these calls (through the issuance of quotes and policies), Foresters manifested an intent to accept the benefit of the co-defendants calling campaigns; including calls that were made by to the Plaintiff that did not result in a quote or policy.

65. Because it accepted the calls' benefits from the co-defendants, including continued customers, Foresters cannot avoid the burden associated with their ratification

66. Vicarious liability for TCPA violations can arise out of ratification. As the FCC stated:

Restatement (Third) of Agency § 2.03, cmt. c. As commonly understood under modern agency principles reflected in the Third Restatement, such apparent authority can arise in multiple ways, and does *not* require that "a principal's manifestation must be directed to a specific third party in a communication made directly to that person. *Id.*, reporter's note a. Rather, "a principal may create apparent authority by appointing a person to a

particular position." *Id.* Similarly, "a principal may permit an agent to acquire a reputation of authority in an area or endeavor by acquiescing in conduct by the agent under circumstances likely to lead to a reputation." *Id.*, cmt. c. And "[r]estrictions on an agent's authority that are known only to the principal and the agent do not defeat or supersede the consequences of apparent authority for the principal's legal relations" with others." *Id.* In such circumstances, for example, the presence of contractual terms purporting to forbid a third-party marketing entity from engaging in unlawful telemarketing activities would not, by themselves, absolve the seller of vicarious liability. *In re Joint Pet. Filed by Dish Network, LLC*, CG Docket No. 11-50, 2013 WL 1934349 *16, ¶ 34, fn 102.

67. Foresters knowingly and actively accepted business that originated through the illegal telemarketing calls complained of herein.

68. The benefits of the relationship Foresters requested from the FCC must be accompanied by the burden.

### Apparent Authority

69. Foresters gave their agents, including the co-defendants, substantial power to affect their legal relations with third parties, including Plaintiff and consumers generally Foresters cloaked their agents with apparent authority to enter into advertising arrangements on their behalf, including lead generation telemarketing which the Plaintiff received.

71. The co-defendants transferred customer information, including the Plaintiff information, directly to Foresters. Thus, the co-defendants has the "ability . . . to enter consumer information into the seller's sales or customer systems," as discussed in the

May 2013 FCC Ruling. Each of the co-defendants are an apparent agents of Foresters.

72. By hiring the co-defendants to make calls on behalf of its agents to generate sales leads, Foresters "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency.

73.Each and every co-defendant knew that its calls were resulting in actual quotes for, and sales of, Foresters' insurance.

74. These quotes and sales were being performed by Foresters themselves.

### FACTUAL ALLEGATIONS

35.  In 2016, the Plaintiff received multiple unwanted automated phone calls to the Plaintiff's cell phones which were not related to any emergency purpose and without the Plaintiff's consent. Despite being more than 20 years from the target demographic, the Plaintiff received over 40 such calls.

36. The calls were from several phone numbers, but primarily 407-775-4354. Other phone numbers used by telemarketers included 843-598-7642, 615-357-7292, 678-778-1014, 321-274-1083, 800-828-1540, 321-214-8213, 219-365-6971, and 708-525-8112. The calls connected to the Plaintiff's cell phones, which were 615-348-1977 and 615-331-7262.

37. Many of the calls contained a pre-recorded message which stated: *"Attention all seniors between the ages of 55 and 85 years of age who may not have life insurance or are concerned they may not have enough. You have been qualified for a plan that will never expire and premiums that will never go up. Press 1 now. There are no medical exams for this coverage and you can be insured as early as*

*tonight"*

38. Often the calls would simply disconnect after the Plaintiff pressed 1, but on other calls, the Plaintiff was able to speak with agents in the call centers and determined that they were all selling final expense life insurance by Forester's.

### Calls involving America Insurance Group, LLC

39. The Plaintiff spoke with one agent of America Insurance Group, named Dave, who stated in response to the Plaintiff asking *"where did you get the leads for these calls from?"* Dave stated *"I think they go through a dialer"* indicting the calls were initiated using an automated telephone dialing system and went on to claim that some demographic information was input into a dialer system, such as age, income, and state and then calls were performed by America Insurance Group.

40. Dave further stated *"When somebody answers, the announcement says Hello, we are doing such and such and if you are interested, press 1"* indicating that he knew that America Insurance Group was placing automated calls with pre-recorded messages and indicated that an intake person would then speak with the prospect that works for America Insurance Group as a result of the automated call with a pre-recorded message.

41. The Plaintiff asked Dave *"How do you know you have the person's consent to call them with a dialer?"* to which Dave replied: *"You don't have to have consent. If you are on a do-not-call list, it doesn't call, otherwise you can call anyone in the country. You don't have to have consent to call somebody"* to which the Plaintiff asked *"Even to a cell phone?"* to which Dave replied *"Yeah. What you*

*are doing is taking a block of numbers and it is going 1 through 9, 1 through 10, 1 through 11, based on the information put into the dialer."* Dave also stated *"Its a computer program we use, and it is programmed to make phone calls. There is nobody else involved."*

42. Dave also identified Mike Samaroo as the owner of America Insurance Group and indicated that Mike Samaroo would know more about the usage of the dialer system and pre-recorded messages. Mike Samaroo and Mahendra Samaroo directed the illegal calls to be placed to the Plaintiff's cell phone using an automated telephone dialing system and pre-recorded message. Mike and Mahendra Samaroo crafted the policies and procedures for America Insurance Group to place illegal calls to consumers regardless of having consent to initiate them using and automated telephone dialing system or pre-recorded message.

**Calls involving Gilbert Swets**

43. The Plaintiff spoke with Gilbert Swets, Tennessee Insurance License # 2297457, Forester's Financial Producer number 568893, as a result of an unsolicited call from Gilbert that was initiated using an automated telephone dialing system as a result of a pre-recorded message. The Plaintiff was conferenced in with a call with an agent named Larry of Apptical who was entering the application originally submitted electronically by Gilbert Swets directly to Forester's insurance.

**Actions by Apptical Corp**

44. Apptical is an intermediary that plays recordings during the calls initiated with an automated telephone dialing system and pre-recorded messages that contain compliance and application information that is verified and passed on to Foresters

*computer systems with the life insurance sales agent on the phone. Without*
Apptical's active assistance, it would not be possible for these applications to be
sent on to Foresters through phone solicitations. Apptical

45. Apptical is an intermediary and contracted agent with both the insurance sales
agents and Foresters for the purpose of selling life insurance through telephone
solicitations. Apptical is a compensated by the insurance sales agents or in the
alternative Foresters directly for delivering completed applications as a result of
illegal telephone calls to consumers and as such the illegal calls placed are for the
benefit of or on behalf of Apptical.

**Calls involving Insurance Professionals of America, Inc.**

46. In another call that was a result of an automated telephone call with a pre-
recorded message pitching the insurance products of Foresters, the Plaintiff spoke
with Octavia Pugh, who was at the time an agent/employee of Insurance
Professionals of America, Inc. The Plaintiff also spoke with Octavia's supervisor
who indicated that they both worked for Insurance Professionals of America.

47. Octavia's supervisor indicated that they had several approved lead vendors for
agents/employees of Insurance Professionals of America to obtain leads, one of
which that was identified by Octavia as Oracle Senior Insurance Group.

48. Octavia's supervisor indicated that Insurance Professionals of America purchased
leads, and that Insurance Professionals of America has approved vendors, which
are provided to their agents like Octavia, which indicates that Insurance
Professionals of America paid the telemarketers directly to call the Plaintiff.

49. Octavia indicated to the Plaintiff that she purchased leads from Oracle Senior

Insurance Group, Inc., and that was the reason why the Plaintiff had received a call for life insurance. Angela Harris is the owner of Insurance Professionals of America and is thus liable for the actions of her agents and employees.

### Involvement of Jason Gsoell, Glea Gsoell, and Katie Boling

50. Jason Gsoell, Glea Gsoell, and Katie Boling operated multiple related corporations that sold insurance leads to insurance agents. They are directly liable for the calls placed to the Plaintiff. In the calls with the initial screening call center agents, the Plaintiff was told that Oraclesig.com was the website for the company that was calling, which is an internet domain registered to Jason Gsoell and is a website for Oracle Senior Insurance Group, Inc., a corporation owned and operated by Jason Gsoell. Jason Gsoell represents that he is the Chief Executive Officer of Oracle Senior Insurance Group, Inc.

51. Glea Gsoell formed Pinnacle Senior Insurance Group Corp. and most recently, Jason and Katie Boling formed Nationwide Senior Marketing, Inc.

52. There is a common enterprise between these individuals and corporations which exist solely to sell leads to insurance agents by placing automated telephone calls using pre-recorded messages to consumers. In this case, Jason Gsoell, Glea Gsoell, and Katie Boling directed the illegal calls to be placed to the Plaintiff in this case.

### VIPCO Advisors Inc.  and Jay Politi Involvement

53. VIPCO Advisors, Inc., and Jay Politi are also involved in a common enterprise with the entities owned by Jason Gsoell, Glea Gsoell, and Katie Boling in operating the call centers that placed automated calls with pre-recorded messages

to the Plaintiff's cell phone.

54. VIPCO Advisors owned and ran call centers in Nashville, TN and Florida, and for the Florida operation, Jason Gsoell was in charge of running that operation. VIPCO Advisors, Inc., was directing the actions of their call center agents and initiating the automated calls with pre-recorded messages that were sent to the Plaintiff on behalf of Forester's.

**United Life Associates LLC and Andre Docos involvement in the telemarketing scheme**

55. United Life Associates LLC also initiated calls using an automated telephone dialing system with a pre-recorded message to the Plaintiff's cell phone for the purpose of selling life insurance from the Foresters defendants.

56. Multiple call center agents identified themselves as working for United Life Associates LLC as the party that initiated the telephone calls to the Plaintiff's cell phone using an automated telephone dialing system and pre-recorded message.

57. United Life Associates, LLC is in a common enterprise with VIPCO Advisors and the entities owned or managed by Jason Gsoell. Andre Docos directed United Life Associates, LLC to place automated calls with pre-recorded messages to the Plaintiff's cell phone for the purpose of selling life insurance by Forester's.

**Actions by Foresters Financial Holding Company, Inc. and Foresters Financial Services, Inc.**

58. The Foresters defendants, (hereafter Foresters') are a "seller" of insurance products, specifically final expense insurance as defined by the FCC's rulings and 47 CFR 64.1200 et seq. Forester's is liable for each and every call placed on their

behalf by the agents or other persons operating in the common enterprises as described above to sell insurance products using automated telephone calls and pre-recorded messages.

59. Forester's regularly allows the telemarketer's to use their trademarks and other intellectual property without objection and with the full knowledge of the Foresters' defendants. Even while getting sued in a Class action and fielding multiple complaints regarding specific agent's conduct in using illegal telemarketing Forester's has not disciplined or terminated a single agent or clawed back any insurance premiums paid to the agents as a result of the illegal actions used to sell Foresters' products.

60. Forester's regularly permits illegal telemarketing on its behalf and has never taken any sort of punitive actions to protect their trademarks or intellectual property.

61. Foresters' regularly pays comissions to agents that Foresters' knows is breaking the law and ratifies the illegal conduct of the agents.

62. Foresters' is liable for each and every illegal telephone call placed by agents selling Foresters' insurance products as described in the complaint.

63. These calls violated the Telephone Consumer protection act, 47 USC 227 (b) by their automated nature and entitle the Plaintiff to $1500 per call in damages.

64. The calls violated the TCPA due to the defendant's failure to maintain a Do not call list, failure to train the agents on the use of a do not call list, pursuant to 47 USC 227 (c)(5) as codified by the FCC's 47 CFR 64.1200(d)(4). These are a separate category of violations entitling the Plaintiff to an additional $1500 per call. In total, the Plaintiff is entitled to recover $3000 per call.

### Actual Damages

65. The Plaintiff has incurred actual damages in this case, specifically, annoyance, reduced data usage in his cell phone plan, reduced enjoyment of his cell phone, frustruation, increased battery usage for his cell phones, and invasion of privac.

### CAUSES OF ACTION:

### COUNT I

### Violations of the Telephone Consumer Protection Act (TCPA)

66. Plaintiff Cunningham incorporates by reference all of the above paragraphs of this complaint as though fully stated herein.

67. The foregoing actions by the Defendants constitute multiple breaches of the TCPA by placing unsolicited automated calls to the Plaintiff's cell phone. These calls violated the TCPA, 47 USC 227(c)(5) as they failed to maintain a do not call list and train their agents on the use of it.

### COUNT II

### Violations of the Telephone Consumer Protection Act (TCPA)

68. Plaintiff Cunningham incorporates by reference all of the above paragraphs of this complaint as though fully stated herein.

69. The foregoing actions by the Defendants constitute multiple breaches of the TCPA by placing automated calls without an emergency purpose to the Plaintiff's phone. These calls violated 47 USC 227(b)

## PRAYER FOR DAMAGES AND RELIEFS

A.  WHEREFORE, Plaintiff, Cunningham, respectfully prays and requests that

judgment be entered against Defendants

B.  Statutory damages of $3000 for each phone call

C.  Pre-judgment interest from the date of the phone calls.

D.  Actual Damages as determined at trial

E.  Costs of bringing this action; and

F.  For such other and further relief as the Court may deem just and proper

Respectfully submitted, 2/13/2017

Craig Cunningham

Plaintiff, Pro-se

Mailing address:

5543 Edmondson Pike, ste 248

Nashville, Tn 37211

615-348-1977