UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

**-FILED-**

**MAY 17 2017**

At _____ M
**ROBERT N. TRGOVICH, Clerk**
**U.S. DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**

CRAIG CUNNINGHAM, Pro-se                    )

    *Plaintiff*                                        )
                        ) CIVIL ACTION NO.: 2:17- CV- 00077

v.                                                   )

                                    )

Foresters Financial holding Company, Inc., Foresters Financial Services, Inc., Octavia
Pugh, Gil Swets, Mike Samaroo, Mahendra Samaroo, America Insurance Group, LLC,
Oracle Senior Insurance Group, Inc., Jason Gsoell, Insurance Professionals of America,
Inc., Angela Harris aka Angela Roach, VIPCO Advisors, Inc., Jay Politi, Nicholas Politi,
Nationwide Senior Marketing, Inc., Nationwide Senior Service, Inc., Axis Benefit
Solutions, Inc., Axis Advisory Group, Inc., Apptical Corp., Glea Gsoell, Pinnacle Senior
Insurance Group Corp., Nationwide Senior Marketing, Inc., I click advanced Marketing
Company  Katie Boling, Roderic Boling,   )

    *Defendants.*

### Plaintiff's Amended complaint

1. The Plaintiff in this case is Craig Cunningham, a natural person and has a mailing
   address of 5543 Edmondson Pike, ste 248, Nashville, TN 37211

2. Foresters Financial Services, Inc. is a Tennessee corporation that can be served
   via registered agent United States Corporation Company, 2908 Poston Ave.,
   Nashville, TN 37203-1312.

3. Octavia Pugh is a Tennessee licensed insurance agent who can be served at 7207
   Laurel Creek Dr., Stockbridge, GA 30281.

4. Foresters Financial Holding Company, Inc.,  is a Delaware corporation that can be
   served via Registered Agent: United States Corporation Company, 2711
   Centerville Road, ste 400 Wilmington, DE 19808.

5. Gilbert Swets is a natural person and Tennessee licensed insurance agent who can

be served at 8486 Magnolia St., St. John Indiana, 46373.

6.  Apptical Corp is a Florida Corporation that can be served via registered agent and corporate officer, Paul Klimek, 2255 Glades Road, Ste 324A, Boca Raton, FL 33431.

7.  Michael Samaroo is a corporate officer of America Insurance Group, LLC and can be served at 11560 Claymont Circle, Windmere, FL 34786 or 11312 Shandon Park Way, Windermere, FL 34786 or 9508 Lake Hugh Dr., Gotha, FL 34734.

8.  Mahendra Samaroo is a natural person who can be served at 9508 Lake Hugh Dr., Gotha, FL 34734 or 385 Centerpointe, Cir, Altamonte Springs, FL 32701.

9.  America Insurance Group LLC is a Florida corporation that can be served via Registered Agent: Mahendra Samaroo, 385 Centerpointe Circle, ste 1333 Altamonte Springs, FL 32701 or Manager Michael Samaroo, 11560 Claymont Circle, Windermere, FL 34786.

10. Oracle Senior Insurance Group, Inc., is a Florida corporation that can be served via Registered Agent, Jason Gsoell, 108 Candlewick, Ct., Sanford, FL 32771 or 108 Candlewick Court, Sanford, FL 32771 or 104 Amberglow Court, Debary, FL 32713

11. Pinnacle Senior Insurance Group Corp. is a Florida corporation that can be served via Registered Agent, Glea Gsoell, 104 Amberglow CT., Debary, FL 32713 or 195 International Parkway, ste 200, Lake Mary, FL 32713.

12. Nationwide Senior Services, Inc., is a Florida corporation that can be served via registered agent Katie Boling or Roderic Boling at a Federal Halfway House, RRM Orlando, 6303 County Road 500, Wildwood, FL 34785.

13. Nationwide Senior Marketing, Inc. is a Florida corporation that can be served via Registered Agent: Jason Gsoell, 910 Market Promenade Ave., Lake Mary, FL 32746 or 7025 CR 46A 1071-319 or via corporate officers Jason Gsoell, 910 Market Promenade Ave., Lake Mary, FL 32746 or Katie Boling 1707 BridgeWater Dr., Lake Mary, FL 32746 or via Roderic Boling at a Federal Halfway House, RRM Orlando, 6303 County Road 500, Wildwood, FL 34785.

14. Nationwide Senior Services, Inc., is a Florida corpoation that can be served via Registered Agent Katie Boling or Roderic Boling at a Federal Halfway House, RRM Orlando, 6303 County Road 500, Wildwood, FL 34785.

15. Katie Boling is a natural person who can be served at 1707 BridgeWater Dr., Lake Mary, FL 32746 or via her spouse, Roderic Boling at a Federal Halfway House, RRM Orlando, 6303 County Road 500, Wildwood, FL 34785.

16. Roderic Boling is a natural person and can be served at a Federal Halfway House, RRM Orlando, 6303 County Road 500, Wildwood, FL 34785.

17. Glea Gsoell is a natural person who can be served at 104 Amberglow Ct., Debary, FL 32713 or 195 International Parkway, ste 200, Lake Mary, FL 32713.

18. Jason Gsoell is a natural person who can be served at 910 Market Promenade Ave., Lake Mary, FL 32746 or 1909 Edgebrook Cir., apt 203, Sanford, FL 32771 or 104 Amberglow Ct., Debary, FL 32713 or 7025 CR 46A, ste 1071-319, Lake Mary, FL 32746.

19. Insurance Professionals of America, Inc., is a Florida corporation that can be served via Registered Agent: Paul Harris 6570 Anchor Loop # 204, Bradenton, FL 34212 or PO bo 20823, Bradenton, FL 34204 or 1943 Morril St., Sarasota, FL

34236 or PO Box 1006 Ellenton, FL 34222.

20. Angela Harris, aka Angela Roach is the sole corporate officer of Insurance Professionals of America, Inc., and can be served at PO Box 20823, Bradenton, FL 34204 or 6109 100th Ave. E. Parrish, FL 34219.

21. VIPCO Advisors Inc. is a Texas Corporation that can be served via Registered Agent: James Lowe 3880 Parkwood Blvd., ste 603, Frisco, Tx 75034 or 4712 Voyager Dr., Firsco, Tx 75034 or corporate officer James Stanley, 1702 Manor Garden Curve, Greenville, Tx 75041.

22. Jay Politi is a natural person and can be served at 7124 Rockland Dr., Charlotte, NC 28213 or 805 Love Bird Ln, Little Elm, Tx 75068 or 2305 S. Custer Rd., APT 430, McKinney, Tx 75070.

23. Nicholas Politi is a natural person and can be served at 7285 Woolmarket Rd Apt H356, Biloxi, MS or 8530 Pointe Aux Chenes Rd., Ocean Springs, MS 39564.

24. Axis Advisory Group, Inc., is a Texas corporation and can be served via Registered agent Nick Politi, 7285 Woolmarket Rd., Apt H356, Biloxi, MS 39532 or 8530 Pointe Aux Chenes Rd., Ocean Springs, MS 39564.

25. Axis Benefit Solutions, Inc., is a Mississippi corporation that can be served via registered agent Nick Politi at 8530 Pointe Aux Chenes Rd., Ocean Springs, MS 39564 or 7285 Woolmarket Rd., Apt H356, Biloxi, MS 39532.

26. I click advanced Marketing Company is a North Carolina corporation that can be served via Registered Agent Jay Politi, at 7124 Rockland Dr., Charlotte, NC 28213 or 805 Love Bird Ln, Little Elm, Tx 75068 or 2305 S. Custer Rd., APt 430, McKinney, Tx 75070.

## Jurisdiction

27. Jurisdiction of this court arises as the acts happened in this county.

28. Venue in this District is proper in that the defendants transact business here, and the acts and transactions occurred here. Personal jurisdiction is apparent as the defendants are making calls from the state of Indiana for the purpose of soliciting Tennessee residents to purchase life insurance and engage Indiana and Tennessee licensed insurance agents to sell policies.

29. Gilbert Swets is an Indiana resident that placed illegal telemarketing calls to the Plaintiff in an attempt to sell the Plaintiff insurance from Foresters and as such, the case is being brought where the Defendants live and a substantial portion of the complained of activities took place.

30. Furthermore, the co-defendants are necessary indispensible parties that also placed illegal telemarketing calls to the Plaintiff to sell insurance from Foresters as well by purchasing leads from the same lead vendors named in this complaint and are operating from the same set of circumstances and facts.

## Nature of the Action

31. This case involves a scheme by Defendant's Foresters Financial holding Company, Inc. and Foresters Financial Services, Inc ("Foresters") (by and through their agent co-defendant's: Octavia Pugh, Gil Swets, Mike Samaroo, Mahendra Samaroo, America Insurance Group, LLC, Oracle Senior Insurance Group, Inc., Jason Gsoell, Insurance Professionals of America, Inc., Angela Harris aka Angela Roach, VIPCO Advisors, Inc., Jay Politi, Nicholas Politi, Nationwide Senior

Marketing, Inc., Nationwide Senior Service, Inc., Axis Benefit Solutions, Inc., Axis Advisory Group, Inc., Apptical Corp., Glea Gsoell, Pinnacle Senior Insurance Group Corp., Nationwide Senior Marketing, Inc., I click advanced Marketing Company Katie Boling, Roderic Boling, ) to market their services through use of pre-recorded messages in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* (hereinafter referred to as the "TCPA").

32. As described more fully below, the defendant insurance companies have issued a high volume of insurance quotes – and made substantial sales of products and services – derived through illegal telemarketing calls placed by their co-defendants.

33. Foresters both delegated its marketing duties to the co-defendants and ratified the conduct of each and every Co-defendant by accepting the referrals and sales generated by the illegal calls on behalf of Foresters. Foresters also actively participated in the telemarketing calls through the actions of its agents. Together, these Defendants contacted, and/or caused to be contacted on their behalf, Plaintiff without their prior express written consent within the meaning of the TCPA.

34. This Court has personal jurisdiction over Foresters because, as the companies and agents are licensed to and do conduct the business of insurance in the State of Indiana, they have established minimum contacts showing they purposefully availed themselves to the resources and protection of the State of Tennessee This Court has personal jurisdiction over each and every co-defendant because the conduct at issue in this case occurred, among other locations, in Tennessee.

35. This Court has personal jurisdiction over the individual defendants because their conduct at issue in this case occurred, among other locations, in Indiana, including his involvement in the pre-recorded telemarketing calls to the Plaintiff. This Court also has personal jurisdiction over the individual defendants because:

a. The individual defendants are 100% owner of their respective corporations;

b. The individual defendants had direct participation in the telemarketing calls that are the subject of this lawsuit;

c. The individual defendants are subject to personal liability as described below.

36. At all times material to this complaint, the individual defendants owned, controlled, or was a corporate officer of their respective corporations, and directed its telemarketing practices.

37. The individual defendants are also individually liable for the telemarketing campaign that is the subject of this complaint pursuant to 47 U.S.C. § 217, which states:

In construing and enforcing the provisions of this chapter, the act, omission, or failure of any officer, agent, or other person acting for or employed by any common carrier or user, acting within the scope of his employment, shall in every case be also deemed to be the act, omission, or failure of such carrier or user as well as that of the person.  The individual defendants directly committed the wrongful acts contained in this Complaint. The individual defendants also authorized the telemarketing campaign performed on behalf of Foresters.

**THE TELEPHONE CONSUMER PROTECTION ACT OF 1991 (TCPA), 47 U.S.C.**

**§ 227**

38. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

39. Through the TCPA, Congress outlawed telemarketing via unsolicited automated or pre-recorded telephone calls ("robocalls"), finding:

*[R]esidential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy.*

*Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call[,] . . . is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.*

40 On January 4, 2008, the FCC released a Declaratory Ruling wherein it confirmed that *"a company on whose behalf a telephone solicitation is made bears the responsibility for any violations." Id. (specifically recognizing "on behalf of" liability in the context of a an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. 227(b)).*

41 The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See FCC Declaratory Ruling, Memorandum and Order, 10 FCC Rcd. 12391, 12397 (¶ 13) (1995).*

42 The co-defendants made the autodialed and prerecorded message calls described

herein "on behalf of" Foresters within the meaning of the 2008 FCC Declaratory

Ruling.

38. On May 9, 2013, the FCC released a Declaratory Ruling reaffirming that a

corporation or other entity that contracts out its telephone marketing "*may be held

vicariously liable under federal common law principles of agency for violations of

. . . section 227(b) . . . that are committed by third-party telemarketers.*"1

43. More specifically, the May 2013 FCC Ruling held that, even in the absence of

evidence of a formal contractual relationship between the seller and the

telemarketer, a seller is liable for telemarketing calls if the telemarketer "*has

apparent (if not actual) authority*" to make the calls. 28 F.C.C.R. at 6586 (¶ 34).

44. The FCC has rejected a narrow view of TCPA liability, including the assertion that a

seller's liability requires a finding of formal agency and immediate direction and

control over the third-party who placed the telemarketing call. *Id.* at n.107.

45. The May 2013 FCC Ruling further clarifies the circumstances under which a

telemarketer has apparent authority:

*[A]pparent authority may be supported by evidence that the seller allows the outside

sales entity access to information and systems that normally would be within the seller's

exclusive control, including: access to detailed information regarding the nature and

pricing of the seller's products and services or to the seller's customer information. The

ability by the outside sales entity to enter consumer information into the seller's sales or

customer systems, as well as the authority to use the seller's trade name, trademark and

service mark may also be relevant. It may also be persuasive that the seller approved,

wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be*

*responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.*

F.C.C.R. at 6592 (¶ 46).

46. The Foresters defendants are legally responsible for ensuring that the co-defendants complied with the TCPA, even if Foresters did not themselves make the calls.

47. Foresters knew that the telemarketers have violated the TCPA on Foresters' behalf and failed to take effective steps within their power to force the telemarketers to cease that conduct. Finally, the May 2013 FCC Ruling states that called parties may obtain *"evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." Id. at 6592-93 (¶ 46). Moreover, evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." Id. at 6593 (¶ 46*

### The Defendants' Marketing Scheme

48. Foresters relies on a series of third parties ("Foresters agents") to promote its goods or services. In fact, if an individual wanted to purchase Foresters products, the Foresters website advises" *You can purchase Foresters quality insurance products through a network of independent life insurance agents. Our sales and marketing staff will be*

*happy to recommend a friendly insurance agent in your area who can assist you.*

*If you are not a Foresters member and are interested in purchasing a Foresters product,*

*please fill out the form below to have an Agent contact you. "*

**Foresters maintain interim control over its agents' actions, both as to telemarketing and other activities.**

49. Foresters maintains the right to control the content of their agents' advertising.

50. An example of how Foresters maintains the right to control their agents advertising is by:

a. Forester's auditors have the right to review, monitor or oversee any activity related to the business of soliciting insurance applications for them

b. Foresters also requires its agents to maintain an insurance policy insuring Foresters for the actions of the agents.

51. Foresters exercised all of these rights during the course of their relationship with each of the co-defendants.

**Vicarious Liability Under the FCC's Order**

52. The Federal Communication Commission concurs that sellers such as Foresters may not avoid liability by outsourcing telemarketing:

*"Allowing the seller to avoid potential liability by outsourcing its telemarketing activities*

*to unsupervised third parties would leave consumers in many cases without an effective*

*remedy for telemarketing intrusions. This would particularly be so if the telemarketers*

*were judgment proof, unidentifiable, or located outside the United States, as is often the*

*case. Even where third-party telemarketers are identifiable, solvent, and amenable to*
*judgment limiting liability to the telemarketer that physically places the call would make*
*enforcement in many cases substantially more expensive and less efficient, since*
*consumers(or law enforcement agencies) would be required to sue each marketer*
*separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may*
*have thousands of 'independent' marketers, suing one or a few of them is unlikely to*
*make a substantive difference for consumer privacy."*

*In re Joint Pet. Filed by Dish Network, LLC*, CG Docket No. 11-50, 2013 WL 1934349, ¶
37 (FCC May 9, 2013) (internal citations omitted).

53. Under the standards outlined in the FCC's order and by other Courts interpreting that
Order, Foresters is liable to the Plaintiff under the following theories:

**a. Direct Liability**

**b. Actual Authority**

**c. Ratification**

**d. Apparent Authority**

**Direct Liability**

Foresters actively participated in the telemarketing calls that are the subject of this case.

54.  The calls to the Plaintiff is an example of how. Although the co-defendants made the
calls and took the Plaintiff's information, Foresters itself participated in the call by
issuing a quote for insurance.

55. The Plaintiff received a quote from Foresters and was offered insurance. Additionally,
the Plaintiff was sent letters directly from Foresters regarding the insurance quotes

and insurance from Foresters.

56. It is the purpose of a call, rather than what is said, that matters for TCPA liability. *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913 (9th Cir. 2012).

57. Each call that the co-defendants placed, regardless of how "far" the call recipient permitted the sales pitch to go, was intended by all parties involved to result in sales of Foresters' products and services.

58. Defendant Foresters issued quotations for insurance wholly derived from the co-defendant's calls, including the ones to the Plaintiff.

59. Foresters also issued insurance policies to persons who accepted such quotations based on the illegal calls from the co-defendants.

### Actual Authority

60. With regard to torts committed by an agent, tort committed by an agent, the Restatement of Agency provides: § 7.04 Agent Acts With Actual Authority

A principal is subject to liability to a third party harmed by an agent's conduct when the agent's conduct is within the scope of the agent's actual authority or ratified by the principal; and

(1) the agent's conduct is tortious, or

(2) the agent's conduct, if that of the principal, would subject the principal to tort liability.

*See* RESTATEMENT (THIRD) OF AGENCY § 7.04 cmt. d(2) (2006).

61. The purpose of Foresters' agents is to serve Foresters by soliciting applications for insurance from consumers on behalf of Foresters

Indeed, the co-defendants did this through the pre-recorded telemarketing alleged in this

Complaint.

62. Foresters also directed the quality, timing, geographic location and volume of co-defendant's applicants that it sent to them.

### Ratification

63.  In the alternative, Foresters repeatedly ratified the co-defendant's illegal marketing scheme by knowingly accepting the benefits of the co-defendant's activities when they accepted applications and customers from them.

64. Since at least April of 2013, Foresters has been on notice that agents were using pre-recorded telemarketing calls to generate customers for Foresters.

65. Upon information and belief, Foresters and their agents were aware of co-defendant's marketing scheme well back to April of 2013 and that thet co-defendants was making calls using an "artificial or prerecorded voice" to generate customers for Foresters.

66. Foresters has continued to do business with telemarketers that are breaking the law to send customers to Foresters for years.

67. In participating in these calls (through the issuance of quotes and policies), Foresters manifested an intent to accept the benefit of the co-defendants calling campaigns; including calls that were made by to the Plaintiff that did not result in a quote or policy.

68. Because it accepted the calls' benefits from the co-defendants, including continued customers, Foresters cannot avoid the burden associated with their ratification

69. Vicarious liability for TCPA violations can arise out of ratification. As the FCC stated:

Restatement (Third) of Agency § 2.03, cmt. c. As commonly understood under modern

agency principles reflected in the Third Restatement, such apparent authority can arise in multiple ways, and does *not* require that "a principal's manifestation must be directed to a specific third party in a communication made directly to that person. *Id.*, reporter's note a. Rather, "a principal may create apparent authority by appointing a person to a particular position." *Id.* Similarly, "a principal may permit an agent to acquire a reputation of authority in an area or endeavor by acquiescing in conduct by the agent under circumstances likely to lead to a reputation." *Id.*, cmt. c. And "[r]estrictions on an agent's authority that are known only to the principal and the agent do not defeat or supersede the consequences of apparent authority for the principal's legal relations" with others." *Id.* In such circumstances, for example, the presence of contractual terms purporting to forbid a third-party marketing entity from engaging in unlawful telemarketing activities would not, by themselves, absolve the seller of vicarious liability. *In re Joint Pet. Filed by Dish Network, LLC*, CG Docket No. 11-50, 2013 WL 1934349 *16, ¶ 34, fn 102.

70. Foresters knowingly and actively accepted business that originated through the illegal telemarketing calls complained of herein.

71. The benefits of the relationship Foresters requested from the FCC must be accompanied by the burden.

## Apparent Authority

72. Foresters gave their agents, including the co-defendants, substantial power to affect their legal relations with third parties, including Plaintiff and consumers generally Foresters cloaked their agents with apparent authority to enter into advertising arrangements on their behalf, including lead generation telemarketing which the

Plaintiff received.

73. The co-defendants transferred customer information, including the Plaintiff information, directly to Foresters. Thus, the co-defendants has the "ability . . . to enter consumer information into the seller's sales or customer systems," as discussed in the May 2013 FCC Ruling. Each of the co-defendants are an apparent agents of Foresters.

74. By hiring the co-defendants to make calls on behalf of its agents to generate sales leads, Foresters "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency.

75. Each and every co-defendant knew that its calls were resulting in actual quotes for, and sales of, Foresters' insurance.

76. These quotes and sales were being performed by Foresters themselves.

## FACTUAL ALLEGATIONS

77. In 2016, the Plaintiff received multiple unwanted automated phone calls to the Plaintiff's cell phones which were not related to any emergency purpose and without the Plaintiff's consent. Despite being more than 20 years from the target demographic, the Plaintiff received over 40 such calls.

78. The calls were from several phone numbers, but primarily 407-775-4354. Other phone numbers used by telemarketers included 843-598-7642, 615-357-7292, 678-778-1014, 407-753-4820, 321-274-1083, 800-828-1540, 321-214-8213, 219-365-6971, and 708-525-8112, and 205-490-7464. The calls connected to the Plaintiff's cell phones, which were 615-348-1977 and 615-331-7262.

79. Many of the calls contained a pre-recorded message which stated: *"Attention all*

*seniors between the ages of 55 and 85 years of age who may not have life insurance or are concerned they may not have enough. You have been qualified for a plan that will never expire and premiums that will never go up. Press 1 now. There are no medical exams for this coverage and you can be insured as early as tonight"*

80. Agents of the telemarketers stated that the website for the company was oraclesig.com.

81. Often the calls would simply disconnect after the Plaintiff pressed 1, but on other calls, the Plaintiff was able to speak with agents in the call centers and determined that they were all selling final expense life insurance by Forester's.

**Calls involving America Insurance Group, LLC**

81. The Plaintiff spoke with one agent of America Insurance Group, named Dave, who stated in response to the Plaintiff asking *"where did you get the leads for these calls from?"* Dave stated *"I think they go through a dialer"* indicting the calls were initiated using an automated telephone dialing system and went on to claim that some demographic information was input into a dialer system, such as age, income, and state and then calls were performed by America Insurance Group.

82. Dave further stated *"When somebody answers, the announcement says Hello, we are doing such and such and if you are interested, press 1"* indicating that he knew that America Insurance Group was placing automated calls with pre-recorded messages and indicated that an intake person would then speak with the prospect that works for America Insurance Group as a result of the automated call with a pre-recorded message.

83. The Plaintiff asked Dave *"How do you know you have the person's consent to call them with a dialer?"* to which Dave replied: *"You don't have to have consent. If you are on a do-not-call list, it doesn't call, otherwise you can call anyone in the country. You don't have to have consent to call somebody"* to which the Plaintiff asked *"Even to a cell phone?"* to which Dave replied *"Yeah. What you are doing is taking a block of numbers and it is going 1 through 9, 1 through 10, 1 through 11, based on the information put into the dialer."* Dave also stated *"Its a computer program we use, and it is programmed to make phone calls. There is nobody else involved."*

84. Dave also identified Mike Samaroo as the owner of America Insurance Group and indicated that Mike Samaroo would know more about the usage of the dialer system and pre-recorded messages. Mike Samaroo and Mahendra Samaroo directed the illegal calls to be placed to the Plaintiff's cell phone using an automated telephone dialing system and pre-recorded message. Mike and Mahendra Samaroo crafted the policies and procedures for America Insurance Group to place illegal calls to consumers regardless of having consent to initiate them using and automated telephone dialing system or pre-recorded message.

### Calls involving Gilbert Swets

85. The Plaintiff spoke with Gilbert Swets, Tennessee Insurance License # 2297457, Forester's Financial Producer number 568893, as a result of an unsolicited call from Gilbert that was initiated using an automated telephone dialing system as a result of a pre-recorded message. The Plaintiff was conferenced in with a call with an agent named Larry of Apptical who was entering the application originally

submitted electronically by Gilbert Swets directly to Forester's insurance.

86. The calls involving Gilbert Swets were initiated using an automated telephone
dialings system and pre-recorded message. The calls were not related to any
emergency purpose, and the Defendant Gilbert did not have the Plaintiff's consent
to call.

87. Gilbert Swets purchased leads from Oracle Senior Insurance Group or one of the
related entities operating in a common enterprise that exists to sell final expense
insurance leads that originate from illegal telemarketing calls that are initiated by
an automated telephone dialings system and pre-recorded message.

### Actions by Apptical Corp

86. Apptical is an intermediary that plays recordings during the calls initiated with an
automated telephone dialing system and pre-recorded messages that contain
compliance and application information that is verified and passed on to Foresters
computer systems with the life insurance sales agent on the phone. Without
Apptical's active assistance, it would not be possible for these applications to be
sent on to Foresters through phone solicitations. Apptical

87. Apptical is an intermediary and contracted agent with both the insurance sales agents
and Foresters for the purpose of selling life insurance through telephone
solicitations. Apptical is a compensated by the insurance sales agents or in the
alternative Foresters directly for delivering completed applications as a result of
illegal telephone calls to consumers and as such the illegal calls placed are for the
benefit of or on behalf of Apptical.

### Calls involving Insurance Professionals of America, Inc.

88. In another call that was a result of an automated telephone call with a pre-recorded message pitching the insurance products of Foresters, the Plaintiff spoke with Octavia Pugh, who was at the time an agent/employee of Insurance Professionals of America, Inc. The Plaintiff also received a call from Octavia's supervisor at Octavia's request and the supervisor indicated that they both worked for Insurance Professionals of America.

89. Octavia's supervisor indicated that they had several approved lead vendors for agents/employees of Insurance Professionals of America to obtain leads, one of which that was identified by Octavia as Oracle Senior Insurance Group.

90. Octavia's supervisor indicated that Insurance Professionals of America purchased leads, and that Insurance Professionals of America has approved vendors, which are provided to their agents like Octavia, which indicates that Insurance Professionals of America paid the telemarketers directly to call the Plaintiff.

91. Octavia indicated to the Plaintiff that she purchased leads from Oracle Senior Insurance Group, Inc., and that was the reason why the Plaintiff had received a call for life insurance. Angela Harris is the owner of Insurance Professionals of America and is thus liable for the actions of her agents and employees.

**Involvement of Jason Gsoell, Glea Gsoell, Roderic Boling, Axis Advisory Group, Inc., Axis Benefit Solutions, Inc., Nationwide Senior Marketing Inc., and Nationwide Senior Services, Inc., Jay and Nicholas Politi and Katie Boling**

92. Jason Gsoell, Glea Gsoell, Roderic Boling, Axis Advisory Group, Inc., Axis Benefit Solutions, Inc., Nationwide Senior Marketing Inc., and Nationwide Senior Services, Inc., Jay and Nicholas Politi, Katie Boling owned and operated multiple

related corporations in a common enterprise that sold insurance leads to insurance agents.

93. The leads are generated by placing automated calls with pre-recorded messages to consumers including the Plaintiff in an attempt to sell final expense life insurance.

94. The defendants engaging in this common enterprise are directly, jointly, and severally liable for the calls placed to the Plaintiff. In the calls with the initial screening call center agents, the Plaintiff was told that Oraclesig.com was the website for the company that was calling, which is an internet domain registered by Katie Boling by and on behalf of  and is a website for Oracle Senior Insurance Group, Inc., a corporation owned and operated by Jason Gsoell. Jason Gsoell represents that he is the Chief Executive Officer of Oracle Senior Insurance Group, Inc.

95. Glea Gsoell formed Pinnacle Senior Insurance Group Corp. and most recently, Jason and Katie Boling formed Nationwide Senior Marketing, Inc.

96. There is a common enterprise between these individuals and corporations which exist solely to sell leads to insurance agents by placing automated telephone calls using pre-recorded messages to consumers. In this case, Jason Gsoell, Glea Gsoell, and Katie Boling directed the illegal calls to be placed to the Plaintiff in this case.

**CRIMINAL HISTORY OF THE INDIVIDUAL DEFENDANTS**

97. Jason Gsoell has an extensive history of arrests for allegations involving drugs and domestic violence.

98. Katie and Roderic Boling also have an extensive criminal history in a telemarketing campaign dubbed "Vicemail" by the US Securities and Exchange Commission. In this Vicemail case, the Defendant Roderic Boling and his then wife created a pre-

recorded message which was made to sound like a wrong number call from a women, in reality, Roderic's wife, that was dating a "Hot Stock exchange boyfriend" that was broadcast across the country in an effort to influence the stock prices of multiple penny stocks. Each of the Bolins admitted to causing a loss of more than $400,000 dollars in a scheme described as *"a sophisticated, first of its kind fraudulent stock promotion scheme"* by US Attorney Jeffrey Taylor.[1]

99. This fraudulent scheme led to an enforcement action, SEC vs Roderick Lee Boling, Cvi., No 06-1329 RMC D.D.C Filed July 27, 2006.[2] Additionally, there was a criminal prosecution from the US Attorney for fraud related to their telemarketing scheme, which led to Roderic pleading guilty to conspiracy to commit securities fraud of 18 USC 371 and Securities fraud in violation of 15 USC 77j(b) and 78ff. Roderic was sentenced to a 60 month term of probation with the special condition that Boling shall serve 8 months in a halfway house in Florida and reported as of February 9, 2017 to start his sentence.

100. According to the statement of offense, Boling was described as having significant experience arranging telemarketing promotions in which pre-recorded messages were distributed to persons throughout the United states.[3]

101. Apparently Roderic has moved on from stock fraud to illegal telemarketing efforts as he has done in this case.

## VIPCO Advisors Inc.  VIPCO Advisors, Inc., Axis Advisory Group, Inc., Axis Benefit Solutions, Inc., Nick  and Jay Politi Involvement

95. VIPCO Advisors, Inc., Axis Advisory Group, Inc., Axis Benefit Solutions, Inc., Nick

---

[1]http://www.washingtonpost.com/wp-dyn/content/article/2007/07/03/AR2007070302101.html
[2]https://www.sec.gov/litigation/litreleases/2007/lr20192.htm
[3]USA v Boling, US District Court for the District of Columbia, Criminal case 06-228, document 134.

and Jay Politi are also involved in a common enterprise with the entities owned by Jason Gsoell, Glea Gsoell, Roderic and Katie Boling in operating the call centers that placed automated calls with pre-recorded messages to the Plaintiff's cell phone.

96. VIPCO Advisors owned and ran call centers in Nashville, TN and Florida, and for the Florida operation, Jason Gsoell was in charge of running that operation. VIPCO Advisors, Inc., was directing the actions of their call center agents and initiating the automated calls with pre-recorded messages that were sent to the Plaintiff on behalf of Forester's.

97. VIPCO Advisors Inc. VIPCO Advisors, Inc., Axis Advisory Group, Inc., Axis Benefit Solutions, Inc., Nick and Jay Politi are all jointly, directly, vicariously, and severally liable parties for the calls in question in this case.

**Actions by Foresters Financial Holding Company, Inc. and Foresters Financial Services, Inc.**

100. The Foresters defendants, (hereafter Foresters') are a "seller" of insurance products, specifically final expense insurance as defined by the FCC's rulings and 47 CFR 64.1200 et seq. Forester's is liable for each and every call placed on their behalf by the agents or other persons operating in the common enterprises as described above to sell insurance products using automated telephone calls and pre-recorded messages.

101. Forester's regularly allows the telemarketer's to use their trademarks and other intellectual property without objection and with the full knowledge of the Foresters' defendants. Even while getting sued in a Class action and fielding

multiple complaints regarding specific agent's conduct in using illegal

telemarketing Forester's has not disciplined or terminated a single agent or clawed

back any insurance premiums paid to the agents as a result of the illegal actions

used to sell Foresters' products.

102. Forester's regularly permits illegal telemarketing on its behalf and has never taken

any sort of punitive actions to protect their trademarks or intellectual property.

103. Foresters' regularly pays comissions to agents that Foresters' knows is breaking

the law and ratifies the illegal conduct of the agents.

104. Foresters' is liable for each and every illegal telephone call placed by agents

selling Foresters' insurance products as described in the complaint.

105. These calls violated the Telephone Consumer protection act, 47 USC 227 (b) by

their automated nature and entitle the Plaintiff to $1500 per call in damages.

106. The calls violated the TCPA due to the defendant's failure to maintain a Do not

call list, failure to train the agents on the use of a do not call list, pursuant to 47

USC 227 (c)(5) as codified by the FCC's 47 CFR 64.1200(d)(4). These are a

separate category of violations entitling the Plaintiff to an additional $1500 per

call. In total, the Plaintiff is entitled to recover $3000 per call.

## Actual Damages

107. The Plaintiff has incurred actual damages in this case, specifically, annoyance,

reduced data usage in his cell phone plan, reduced enjoyment of his cell phone,

frustruation, increased battery usage for his cell phones, and invasion of privac.

## CAUSES OF ACTION:

## COUNT I

**Violations of the Telephone Consumer Protection Act (TCPA)**

108.    Plaintiff Cunningham incorporates by reference all of the above paragraphs of this complaint as though fully stated herein.

109.    The foregoing actions by the Defendants constitute multiple breaches of the TCPA by placing unsolicited automated calls to the Plaintiff's cell phone. These calls violated the TCPA, 47 USC 227(c)(5) as they failed to maintain an internal do not call list and train their agents on the use of it and for placing calls using pre-recorded messages that do not identify the caller or seller of goods or services.

## COUNT II

**Violations of the Telephone Consumer Protection Act (TCPA)**

110.    Plaintiff Cunningham incorporates by reference all of the above paragraphs of this complaint as though fully stated herein.

111.    The foregoing actions by the Defendants constitute multiple breaches of the TCPA by placing automated calls with pre-recorded messages without an emergency purpose to the Plaintiff's phone. These calls violated 47 USC 227(b)

## PRAYER FOR DAMAGES AND RELIEFS

A.    WHEREFORE, Plaintiff, Cunningham, respectfully prays and requests that judgment be entered against Defendants

B.    Statutory damages of $3000 for each phone call

C.    Pre-judgment interest from the date of the phone calls.

D.    Actual Damages as determined at trial

E. Costs of bringing this action; and

F. For such other and further relief as the Court may deem just and proper

Respectfully submitted, 5/16/2017

Craig Cunningham

Plaintiff, Pro-se

Mailing address:

5543 Edmondson Pike, ste 248

Nashville, Tn 37211

615-348-1977