**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION**

|  |  |  |
|---|---|---|
| CRAIG CUNNINGHAM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| FORESTERS FINANCIAL SERVICES, | ) | |
| INC.,OCTAVIA PUGH, FOSTERS | ) | |
| FINANCIAL HOLDING COMPANY, INC., | ) | NO. 2:17-CV-00077 |
| GIL SWETS,MICHAEL SAMAROO, | ) | |
| MAHENDRA SAMAROO, AMERICA | ) | |
| INSURANCE GROUP, LLC, ORACLE | ) | |
| SENIOR INSURANCE GROUP, INC., | ) | |
| JASON GSOELL, INSURANCE | ) | |
| PROFESSIONALS OF AMERICA, INC., | ) | |
| ANGELA HARRIS aka ANGELA ROACH, | ) | |
| VIPCO ADVISORS, INC., JAY | ) | |
| POLITI, APPTICAL CORP., UNITED | ) | |
| LIFE ASSOCIATES, LLC, ANDREW | ) | |
| DECOS, GLEA GSOELL, PINNACLE | ) | |
| SENIOR INSURANCE GROUP CORP., | ) | |
| NATIONWIDE SENIOR MARKETING, | ) | |
| INC., I CLICK ADVANCED MARKETING | ) | |
| COMPANY, KATIE BOLING, NICHOLAS | ) | |
| POLITI, NATIONWIDE SENIOR | ) | |
| SERVICE INC., AXIS BENEFIT | ) | |
| SOLUTIONS INC., AXIS ADVISORY | ) | |
| GROUP INC., and RODERIC BOLING, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## OPINION AND ORDER

This matter is before the Court on the Renewed Motion of

Defendants Angela Harris aka Angela Roach, and Insurance

Professionals of America, Inc., to Dismiss, filed on May 25, 2017

(DE #26), the Motion to Dismiss filed by Octavia Pugh on June 19,

2017 (DE #31), Defendant Gil Swets' Motion to Clarify Relief Sought in Angela Harris aka Angela Roach and Insurance Professionals of America, Inc.'s (together, "Harris Defendants") Motion to Dismiss and Notice of Non-consent to Transfer, filed on August 10, 2017 (DE #49), and the Motion to Dismiss of Defendants Foresters Financial Holding Company, Inc. and Foresters Financial Services, Inc. (together, "Foresters Defendants") filed on August 25, 2017 (DE #57). For the reasons set forth below, the Harris Defendants' renewed motion to dismiss is **GRANTED** (DE #26). Defendant Octavia Pugh's motion to dismiss is **GRANTED** (DE #31), Defendant Gil Swets' motion to clarify relief sought is **DENIED AS MOOT** (DE #49), and Foresters Defendants' motion to dismiss is **GRANTED IN PART AND DENIED IN PART** (DE #57). The claim against Foresters Financial Services, Inc. for violation of 47 U.S.C. § 227(b) based on a direct theory of liability is **DISMISSED WITHOUT PREJUDICE**. The Clerk is **ORDERED** to **DISMISS** the claims against defendants Angela Harris aka Angela Roach, Insurance Professionals of America, Inc., Octavia Pugh, and Foresters Financial Holding Company, Inc., for lack of personal jurisdiction.

BACKGROUND

Plaintiff Craig Cunningham ("Plaintiff"), who is proceeding *pro se*, brought this action against more than twenty defendants alleging that the Foresters Defendants engaged in a scheme with

the other defendants to market their services through the use of pre-recorded messages in violation of the Telephone Consumer Protection Act, 47 U.S.C. §227, *et seq*. ("TCPA"). In response to the Complaint, the Harris Defendants move to dismiss for lack of personal jurisdiction pursuant to Federal Rules of Civil Procedure Rule 12(b)(2) and improper venue. In the alternative, the Harris Defendants move to transfer the case to the United States District Court for the Middle District of Florida pursuant to 28 U.S.C. § 1404(a) or 28 U.S.C. § 1406(a). (DE #26.) Plaintiff filed a three-sentence response to the Harris Defendants' motion. (DE #32.) The Harris Defendants did not file a reply brief. Defendant Gil Swets ("Swets") filed a motion to clarify the relief sought in the Harris Defendants' motion to dismiss. (DE #49.) No party responded to Swets' motion.

Defendant Octavia Pugh ("Pugh") filed a motion to dismiss for lack of personal jurisdiction and failure to state a claim. (DE #31.) Plaintiff filed a response to this motion. Pugh did not file a reply. Finally, the Foresters Defendants filed a motion to dismiss for lack of personal jurisdiction and failure to state a claim. (DE #57.) Plaintiff filed a response to the Forester Defendants' motion, and the Forester Defendants filed a reply brief.

<u>DISCUSSION</u>

<u>Facts</u>[1]

Plaintiff's Amended Complaint ("Complaint") alleges, in relevant part, the following:

Plaintiff is a natural person living in Nashville, Tennessee. (DE #22, ¶1.) Defendant Foresters Financial Services, Inc. ("FFSI") is a Tennessee corporation that can be served in Tennessee. (*Id.*, ¶2.) Defendant Foresters Financial Holding Company, Inc. ("FFHCI") is a Delaware corporation that can be served in Delaware. (*Id.*, ¶4.) Defendant Pugh is a Tennessee licensed insurance agent who can be served in Georgia. (*Id.*, ¶3.) Defendant Swets is a Tennessee licensed insurance agent who can be served in Indiana. (*Id.*, ¶5.) Defendant Insurance Professionals of America, Inc. ("IPA") is a Florida corporation that can be served in Florida. (*Id.*, ¶19.) Defendant Angela Harris aka Angela Roach ("Harris") is the sole corporate officer of IPA and can be served in Florida. (*Id.*, ¶20.) The Complaint names 19 additional

---

[1] Where a defendant moves to dismiss a complaint pursuant to Rule 12(b)(2), the plaintiff bears the burden of demonstrating the existence of jurisdiction. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.,* 338 F.3d 773, 782 (7th Cir. 2003). When the court rules on such a motion based solely on written materials provided by the parties, the plaintiff "need only make out a *prima facie* case of personal jurisdiction. . . . In evaluating whether the *prima facie* standard has been satisfied, the plaintiff is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record." *Id.* (internal quotations and citations omitted). Therefore, any disputed facts have been resolved in plaintiff's favor.

defendants, all of whom are residents or corporations of the states of Florida, Texas, Mississippi, or North Carolina. (*Id.*, ¶¶ 6-18, 21-26.)[2]

The Complaint alleges that personal jurisdiction is apparent as the defendants are making calls from the state of Indiana for the purpose of soliciting Tennessee residents to purchase life insurance and engage Indiana and Tennessee licensed insurance agents to sell policies. (*Id.*, ¶28.) Swets is an Indiana resident who allegedly placed illegal telemarketing calls to Plaintiff in an attempt to sell Plaintiff insurance from the Foresters Defendants. (*Id.*, ¶29.) The Foresters Defendants allegedly delegated its marketing duties to the co-defendants, and ratified the conduct of the co-defendants by accepting the referrals and sales generated by the illegal calls on behalf of the Foresters Defendants, and actively participated in the telemarketing calls through the actions of its agents. (*Id.*, ¶33.) The co-defendants allegedly contacted, and/or caused to be contacted on their behalf, Plaintiff without his prior express written consent within the meaning of the TCPA. (*Id.*)

---

[2] The Clerk entered default judgment against defendants Michael Samaroo, Mahendra Samaroo, American Insurance Group, LLC, Nicholas Politi, Jay Politi, Nationwide Senior Marketing, Inc., Nationwide Senior Service, Inc., and Katie Boling on August 16, 2017. (DE #56.)

The co-defendants allegedly made autodialed and prerecorded message calls on behalf of the Foresters Defendants, who are legally responsible for ensuring that the co-defendants complied with the TCPA. (*Id.*, ¶¶42, 46, 100, 104.) "Foresters relies on a series of third parties ('Foresters agents') to promote its goods or services. In fact, if an individual wanted to purchase Foresters products, the Foresters website advises 'You can purchase Foresters quality insurance products through a network of independent life insurance agents. . . .'" (*Id.*, ¶48.) The Foresters Defendants allegedly knew that the telemarketers violated the TCPA on their behalf and failed to take effective steps within their power to force the telemarketers to cease that conduct. (*Id.*, ¶¶47, 101-03.) The Complaint asserts that the Forester Defendants are liable under the theories of direct liability, actual liability, ratification, and apparent authority. (*Id.*, ¶¶53-76.) The Foresters Defendants' agents solicit applications for insurance on the Foresters Defendants' behalf, and the co-defendants did so using pre-recording telemarketing. (*Id.*, ¶61.) The Foresters Defendants directed the quality, timing, geographic location and volume of co-defendants' applicants. (*Id.*, ¶62.)

In 2016, Plaintiff allegedly received over 40 unwanted automated calls to Plaintiff's cell phones. (*Id.*, ¶¶77-78.) Many of the calls included the following message: "Attention all

seniors between the ages of 55 and 85 years of age who may not
have life insurance or are concerned they may not have enough.
You have been qualified for a plan that will never expire and
premiums that will never go up. Press 1 now. There are no medical
exams for this coverage and you can be insured as early as
tonight." (*Id.*, ¶79.) Agents of the telemarketers stated that
the website for the company was oraclesig.com. (*Id.*, ¶80.) On
some calls, Plaintiff was able to speak with agents in the call
centers and determined that they were all selling final expense
life insurance by the Foresters Defendants. (*Id.*, ¶81.) Plaintiff
once spoke with an agent named Dave and asked him where he got the
leads for these calls. (*Id.*, ¶81.) Dave responded, "I think they
go through a dialer," and indicated the calls were initiated using
an automated telephone dialing system and that some demographic
information was input into a dialer system, such as age, income,
and state. (*Id.*, ¶81.) Dave also stated, "Its [*sic*] a computer
program we use, and it is programmed to make phone calls. There
is nobody else involved." (*Id.*, ¶83.)

In another call that was a result of an automated telephone
call with a pre-recorded message, Plaintiff spoke with Pugh, who
was allegedly an agent/employee of IPA. (*Id.*, ¶88.) Plaintiff
also received a call from Pugh's supervisor at her request and the
supervisor indicated that they both worked IPA. (*Id.*) The
supervisor indicated that they had several approved lead vendors

for agents/employees of IPA to obtain leads, that IPA purchased leads, which are provided to their agents, indicating that IPA paid the telemarketers directly to call Plaintiff. (*Id.*, ¶¶89-90.) Pugh indicated to Plaintiff that she purchased leads from Oracle Senior Insurance Group, Inc., and that was the reason why Plaintiff had received a call for life insurance. (*Id.*, ¶91.)

The Complaint asserts violations of the TCPA, 47 U.S.C. §§ 227(c)(5) and 227(b), and seeks statutory damages of $3,000 per phone call, actual damages and pre-judgment interest.

Motions to Dismiss for Lack of Personal Jurisdiction

A defendant may move for dismissal of a complaint based on a lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). Plaintiff bears the burden of establishing that personal jurisdiction exists, but because the issue is raised in a motion to dismiss, he need only make a *prima facie* showing of jurisdictional facts. *Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012). "A district court sitting in diversity has personal jurisdiction over a nonresident defendant only if a court of the state in which it sits would have jurisdiction." *Purdue Research Found. v. Sanofi-Synthelabo, S.A.,* 338 F.3d 773, 779 (7th Cir. 2003) (citation omitted). The inquiry into whether an Indiana court would have jurisdiction over the defendant has two steps. *Id.* First, the court must decide whether the Indiana long-arm statute subjects the defendant to *in personam* jurisdiction. *Id.*

If so, then the court must determine whether the exercise of jurisdiction comports with federal due process requirements. *Id*. Indiana's long-arm statute, Trial Rule 4.4(A), provides in part that an Indiana court "may exercise jurisdiction on any basis not inconsistent with the Constitutions of this state or the United States." Ind. R. Trial P. 4.4(A). Trial Rule 4.4(A) "reduce[s] analysis of personal jurisdiction to the issue of whether the exercise of personal jurisdiction is consistent with the Federal Due Process Clause." *LinkAmerica Corp. v. Cox*, 857 N.E.2d 961, 967 (Ind. 2006). "Thus, the statutory question merges with the constitutional one – if [Indiana] constitutionally may exercise personal jurisdiction over a defendant, its long-arm statute will enable it to do so." *Northern Grain Marketing, LLC v. Greving*, 743 F.3d 487, 492 (7th Cir. 2014) (citations omitted).

For personal jurisdiction to be consistent with due process, a defendant must have established "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984) (internal quotations and citation omitted). A court has general personal jurisdiction over a defendant in any action, even if that action "does not arise out of or relate to the [defendant's] activities in the forum State," where the defendant has sufficient continuous and

systematic general contacts with the forum state. *Id.* at 414–16. A court has specific jurisdiction over a nonresident defendant when "a controversy is related to or 'arises out of' a defendant's contacts with the forum." *Id.* at 414 (citation omitted); *see Greving*, 743 F.3d at 492 ("To support an exercise of specific personal jurisdiction, the defendant's contacts with the forum state must directly relate to the challenged conduct or transaction.") (citation and internal quotation marks omitted). This inquiry "focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 134 S. Ct. 1115, 1121, 188 L. Ed. 2d 12 (2014) (citation and internal quotation marks omitted). Specific jurisdiction is appropriate where (1) the defendant "purposefully availed himself of the privilege of conducting business in the forum state or purposefully directed his activities at the state;" (2) "the alleged injury [arose] from the defendant's forum-related activities;" and (3) the exercise of jurisdiction comports with "traditional notions of fair play and substantial justice." *Felland*, 682 F.3d at 673 (citations omitted). If a defendant submits evidence in opposition to a finding of personal jurisdiction, "the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Purdue Research*, 338 F.3d at 783. The Court "accept[s] as true any facts contained in the defendant's affidavits that remain unrefuted by the plaintiff." *GCIU-Employer*

*Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1020 n.1 (7th Cir. 2009) (citation omitted). Because both Plaintiff and Pugh are proceeding *pro se*, the Court notes that *pro se* filings must be construed liberally, but even *pro se* litigants must follow the rules of civil procedure. *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006) (citation omitted).

The Harris Defendants argue that the Court has neither general nor specific jurisdiction over them. In support, they proffer the affidavit of Harris, in which she attests that she has never: lived in Indiana; done business in Indiana; had any clients in Indiana; or called or solicited prospective clients in Indiana. (DE #26-3.) As the principal shareholder of IPA, Harris also attests that IPA's principal place of business is in Florida, all of its agents are located in Florida, none of its agents are licensed to do business in Indiana, it has no clients or customers in Indiana, and IPA's phone records show that its agents have never made a phone call to any Indiana number. (*Id.*)

Plaintiff's one-page response to the Harris Defendants' motion to dismiss does not assert that the Court has personal jurisdiction over the Harris Defendants. Rather, it merely states that he agrees that the claims against the Harris Defendants should be transferred to the appropriate district court in Florida. (DE #32 at 1.) Because Plaintiff does not argue or allege that the Court has general jurisdiction over the Harris Defendants, he has

"waived any general jurisdiction argument." *RAR, Inc. v. Turner Diesel, Ltd.,* 107 F.3d 1272, 1277 (7th Cir. 1997) ("RAR has never alleged that Turner has such systematic contacts with Illinois. RAR has thus waived any general jurisdiction argument") (citation omitted). Similarly, because Plaintiff makes no case at all for the exercise of specific jurisdiction against the Harris Defendants, he has waived this argument. *See GoldenTree Asset Mgmt. LP v. BNP Paribas S.A.,* 64 F. Supp. 3d 1179, 1188 (N.D. Ill. 2014) (finding plaintiff waived arguments in support of specific personal jurisdiction). Given the unrefuted evidence of the Harris Defendants' lack of contacts with the State of Indiana, the Court finds that it does not have personal jurisdiction over them. As such, the Court need not address the alternative arguments raised in the Harris Defendants' motion to dismiss.

Pugh, who is proceeding *pro se*, also moves to dismiss based on lack of personal jurisdiction. Pugh does not proffer an affidavit supporting her motion, though she supplemented her motion to provide her address, which is located in Georgia. (DE #46.) In response, Plaintiff makes no effort to demonstrate Pugh's contacts with Indiana, but notes that Pugh fails to state why the Court lacks personal jurisdiction over her or proffer supporting evidence. (DE #48 at 2.) Pugh did not file a reply brief.

The Complaint does not indicate that this Court has a basis for general or specific personal jurisdiction over Pugh. The

Complaint alleges that Plaintiff is a Tennessee resident and that Pugh is a Tennessee-licensed insurance agent who can be served in Georgia. (DE #22, ¶¶1, 3.) It also alleges that Plaintiff spoke to Pugh as a result of an automated telephone call with a pre-recorded message, and that Pugh's purchase of leads was the reason Plaintiff had received the automated telephone call.[3] (*Id.*, ¶¶88, 91.) The Complaint does not allege any connection between Pugh and the State of Indiana. Because Plaintiff has not met his burden to show "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice*," Helicopteros,* 466 U.S. at 414, Pugh's motion to dismiss for lack of personal jurisdiction is granted.

The Foresters Defendants similarly argue that the Court does not have personal jurisdiction over FFHCI. In support, they proffer the Affidavit of Francis Gannon ("Gannon"). Gannon attests that FFHCI is incorporated in the State of Delaware, does not have any offices, or own or lease any property in Indiana. (DE #58-2 at 2.) Gannon further attests that FFHCI does not conduct any business operations in Indiana, market or sell any products or services in Indiana, maintain a telephone number in Indiana, have

---

[3] While the Complaint alleges that Pugh was an agent/employee of IPA, IPA has proffered an uncontested affidavit that Pugh has never been an agent or employee of IPA. (DE #26-3, ¶11.)

a registered agent or any employees, or have any contracts with any persons or entities located in Indiana. (*Id.*)

Plaintiff does not respond with any argument supporting the Court's personal jurisdiction over FFHCI. Rather, he states that "[t]o the extent that the court lacks personal jurisdiction over one of the Forester's [*sic*] entities, the court should dismiss the case without prejudice." (DE #64 at 3.) Given the unrefuted evidence of FFHCI's lack of contacts with the State of Indiana, the Court finds that it does not have personal jurisdiction over FFHCI.

Motion to Dismiss for Failure to State a Claim

Federal Rule of Civil Procedure 12(b)(6) allows a complaint to be dismissed if it fails to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In order to survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007)). All well-pleaded facts must be accepted as true, and all reasonable inferences from those facts must be resolved in the plaintiff's favor. *Pugh v. Tribune Co*., 521 F.3d 686, 692 (7th Cir. 2008). However, pleadings consisting of no more than mere conclusions are not entitled to the assumption of truth. *Iqbal*,

556 U.S. at 678-79. This includes legal conclusions couched as factual allegations, as well as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id*. at 678 (citing *Twombly*, 550 U.S. at 555). As noted above, Plaintiff is appearing *pro se* in this matter. A document filed *pro se* is to be "liberally construed," and a *pro se* complaint, however inartfully pleaded, "must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L.Ed.2d 1081 (2007) (citations omitted).

The Complaint asserts that the defendants violated the TCPA, 47 U.S.C. §227(b). (DE #22, Count II.) Under the TCPA, a plaintiff must allege four elements to state a cause of action: (1) a call was made, (2) the caller used automatic telephone dialing system or artificial or prerecorded voice, (3) the call was made to a cellular telephone number, and (4) the recipient of the call did not give the caller express written consent to make the call. 47 U.S.C. § 227(b)(1)(A)(iii); *see Mauer v. Am. Intercontinental Univ., Inc.,* No. 16 C 1473, 2016 WL 4651395, at *2 (N.D. Ill. Sept. 7, 2016). Under certain circumstances, parties that do not initiate calls may be held vicariously liable for TCPA violations committed by third-party telemarketers "under a broad range of agency principles, including not only formal agency, but also

principles of apparent authority and ratification." *In re Dish Network, LLC,* 28 FCC Rcd. 6574, 6584 (2013).

<u>Theories of Liability</u>

The Foresters Defendants challenge the four theories of liability alleged against them in the Complaint: direct liability, vicarious liability, ratification and apparent authority. They maintain that the Complaint fails to allege direct liability because it fails to allege that they made any of the telephone calls at issue. *See Vessal v. Alarm.com,* No. 17 C 2188, 2017 WL 4682736, at *2 (N.D. Ill. Oct. 18, 2017) ("Direct liability under the TCPA, however, applies only to entities that 'initiate' the telemarketing calls. . . . [A]s the FCC made clear to initiate a call means to physically place a telephone call."). Plaintiff does not respond to this argument, and therefore waives it. *See Bonte v. U.S. Bank, N.A.,* 624 F.3d 461, 466 (7th Cir. 2010) ("silence leaves us to conclude" a concession; "[f]ailure to respond to an argument . . . results in waiver"). Moreover, the Complaint does not allege that the Foresters Defendants made any telephone calls; rather, it alleges that "co-defendants" made the calls. (DE #22, ¶54.) As such, the Complaint fails to allege a TCPA claim against the Foresters Defendants under the direct liability theory.

Turning to Plaintiff's other theories of liability, a party may be held vicariously liable for a TCPA violation committed by

a third-party "under federal common law principles of agency." *Dish Network,* 28 FCC Rcd. at 6584. Agency is "the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf, and the agent manifests assent or otherwise consents so to act." Restatement (Third) of Agency § 1.01 (2006). "Agency is typically a factual issue, with the plaintiff at the pleading stage only required to allege a factual basis that gives rise to an inference of an agency relationship through the use of generalized as opposed to evidentiary facts." *Mauer*, 2016 WL 4651395, at *2; *see Dish Network*, 28 FCC Rcd. at 6593, n.139 ("[N]othing in our ruling requires a consumer to prove at the time of their complaint (rather than reasonably allege) that a call was made on the seller's behalf."); *Clarendon Nat'l Ins. Co. v. Medina,* 645 F.3d 928, 935 (7th Cir. 2011) ("The question of whether an agency relationship exists is normally a question of fact.").

The Foresters Defendants assert that the Complaint fails to plead that the co-defendants were acting as their agents. *See Smith v. State Farm Mut. Auto. Ins. Co.*, No. 13 C 2018, 2013 WL 5346430, at *3 (N.D. Ill. Sept. 23, 2013) (dismissing TCPA claim without prejudice because plaintiff's allegations merely supported a claim that defendant's insurance agents are its legal agents, not that the third-party telemarketer who made the calls was the

defendant's agent).[4]  Plaintiff responds that the Complaint states a claim for TCPA violations based on vicarious liability.  The Complaint alleges that Plaintiff received 40 automated pre-recorded calls in 2016, and provides Plaintiff's telephone numbers, as well as the telephone numbers from which the automated calls were made.  While it does not allege that the pre-recorded messages identified the Foresters Defendants by name, it does allege that on some calls, "Plaintiff was able to speak with agents in the call centers and determined that they were all selling final expense life insurance by Forester's [*sic*]." (DE #22, ¶81.)  The Complaint describes some of those calls.  (*See, e.g., id.*, ¶¶81-85.)  It also alleges that Foresters Defendants' agents solicit applications for insurance on their behalf, that the co-defendants did so using pre-recording telemarketing, and that the Foresters Defendants directed the quality, timing, geographic location and volume of co-defendants' applicants.  (*Id.*, ¶61-62.)  Plaintiff

---

[4]The Foresters Defendants also argue that the TCPA claim should be dismissed because the Complaint is a shotgun pleading that impermissibly lumps together the defendants and the alleged calls. *See Bentley v. Bank of Am., N.A.,* 773 F. Supp. 2d 1367, 1374 (S.D. Fla. 2011) (dismissing TCPA claim without prejudice for improperly lumping together defendants where "nowhere in the Complaint does Plaintiff identify which Defendant made each call, but instead he simply lumps the Defendants together despite that they are separate and distinct legal entities").  However, district courts in this Circuit have rejected the argument that a plaintiff's allegations "impermissibly lump the defendants together" where they sufficiently placed defendants on notice of the plaintiff's claims. *Toney v. Quality Res., Inc.,* 75 F. Supp. 3d 727, 733 (N.D. Ill. Dec. 1, 2014).

contends that he cannot ascertain the identity of the callers, or the contracts and relationships between the parties, without the aid of discovery.  The Forester Defendants respond that because the "complaint is deficient under Rule 8, [Plaintiff] is not entitled to discovery, cabined or otherwise." *Iqbal,* 556 U.S. at 686.

In *Charvat v. Allstate Corporation*, 29 F. Supp. 3d 1147 (N.D. Ill. 2014), the court denied the defendants' motion to dismiss a TCPA claim despite the plaintiff's failure to identify the third-party telemarketer or lead generator who initiated the call, or allege what arrangement, if any, that third party had with either defendant.  *Id*. at 1150–51.  The court explained that "it is defendants, not plaintiff, who can reasonably be expected to know these facts, and plaintiff's allegations, taken together, suffice to entitle him to discovery on the issue of vicarious liability." *Id*. at 1151.  "A plaintiff need not allege facts completely within the defendant's knowledge at the pleading stage." *Mauer*, 2016 WL 4651395, at *2 (citation omitted).  "Plaintiffs may obtain evidence of a relationship between a vendor and telemarketer through discovery if they do not know the information on their own." *Id*. (citing *Charvat,* 29 F. Supp. 3d at 1151); *see Dish Network*, 28 FCC Rcd. at 6592-93 (consumers may acquire evidence of relationship between telemarketer and seller through discovery if they are not independently privy to such information).  "Thus, at the pleading

stage, it is irrelevant that a plaintiff cannot identify the third-party telemarketer, or what arrangement that third party had with the defendant vendors because the defendants, and not the plaintiff, are reasonably expected to know this information." *Id.* (citing *Charvat*, 29 F. Supp. 3d at 1150–51).

Here, the Complaint does not allege details regarding the relationships between the Foresters Defendants and other defendants, but Plaintiff cannot reasonably be expected to know such information at this stage of litigation. While Plaintiff must ultimately prove each individual defendant's role and relationship to those who made the calls, at this stage, he need only generally allege his agency claim so as to provide each defendant notice of the claims against them. *See id.* at *3 (citing *Toney*, 75 F. Supp. 3d at 733); *Vessal*, 2017 WL 4682736, at *3 (denying motion to dismiss TCPA claim where "[t]he only allegations in the complaint to establish any sort of connection between [defendant] Alarm.com and the callers are made on information and belief and the assertion that some of the callers identified Alarm.com as their web address"). This is the case here, where Plaintiff likely does not have access to facts to more precisely identify each defendant's role without the benefit of discovery. *See Mauer*, 2016 WL 4651395, at *3 (citing *Charvat*, 29 F. Supp. 3d at 1151). Plaintiff has sufficiently put the Foresters Defendants on notice of his TCPA claims, and thus, the Court finds that he

has adequately alleged a basis to hold them vicariously liable under a classic agency theory. *Id*.[5]

Automated Telephone Dialing System

The Foresters Defendants also argue that the Complaint fails to adequately allege that the calls Plaintiff received were placed by an automated telephone dialing system ("ATDS").[6] "Conclusory allegations that a call was made with an ATDS . . . are insufficient." *Mauer*, 2016 WL 4651395, at *4 (citations omitted). Rather, "a plaintiff should use 'laymen's terms' or describe the surrounding circumstances that give rise to the inference that an ATDS, artificial, or prerecorded voice was used." *Id.* (citations omitted). "For example, a TCPA plaintiff could describe the robotic sound of the voice on the other line, the lack of human response when he attempted to have a conversation with the 'person' calling him, the generic content of the message he received, or anything else about the circumstances of a call or message contributing to his belief it was pre-recorded or delivered via an

---

[5] Because the Court finds a basis for vicarious liability under the agency theory of actual authority, it need not address whether Plaintiff has sufficiently pleaded a basis for liability under ratification or apparent authority theories. *See Mauer*, 2016 WL 4651395, at *3 n.6.

[6] The statute defines the term "automatic telephone dialing system" as "equipment which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers." 47 U.S.C. § 227(a)(1)(A)-(B).

ATDS." *Johansen v. Vivant, Inc.,* No. 12 C 7159, 2012 WL 6590551, at *3 (N.D. Ill. Dec. 18, 2012).

The Foresters Defendants maintain that the Complaint's allegations are insufficient to suggest that the calling system "had the functionality and technical characteristics of an ATDS." (DE #58 at 18.) District courts in this circuit have held that "a TCPA plaintiff should not be expected to plead details regarding the technical functionality of the alleged ATDS," rather, "the complaint must include at least some facts to support the conclusion that an ATDS was used." *Izsak v. Draftkings, Inc.,* 191 F. Supp. 3d 900, 904 (N.D. Ill. 2016) (noting "a plaintiff could describe the promotional content or the generic, impersonal nature of the text message allegedly sent using an ATDS"). Moreover, Plaintiff need not state facts that would be completely within the defendants' knowledge. *See Mauer*, 2016 WL 4651395, at *4 (citations omitted). "This includes the precise type of machine used for the communication, as it would be nearly impossible for plaintiffs to obtain evidence to determine the type of machine used for a call absent discovery." *Id.* (citations omitted); *see Torres v. Nat'l Enter. Sys.,* No. 12 C 2267, 2012 WL 3245520, at *3 (N.D. Ill. Aug. 7, 2012) (denying motion to dismiss where plaintiff allegedly received a call from defendant with a prerecorded voice because it was premature to address evidentiary issues prior to discovery). Requiring more would make defendants "virtually

immune to TCPA claims, which clearly is not what was intended by Congress in creating the TCPA." *Mauer*, 2016 WL 4651395, at *4 (citation omitted).

Here, the Complaint alleges that Plaintiff received calls with a "pre-recorded message" about life insurance, and provides a quote of that message. (DE #22, ¶79.) It alleges that after Plaintiff pressed 1 as directed by the pre-recorded message, he once spoke with an agent named Dave and asked him where he got the leads for these calls. (*Id.*, ¶81.) Dave allegedly responded, "I think they go through a dialer." (*Id.*, ¶81.) Dave also allegedly stated, "Its [*sic*] a computer program we use, and it is programmed to make phone calls. There is nobody else involved." (*Id.*, ¶83.) The Court finds that these allegations meet Plaintiff's minimal burden of alleging the necessary facts to show that the calls at issue were made using an ATDS.

### 47 U.S.C. § 227(c)(5)

The Complaint also alleges that defendants violated Section 227(c)(5) of the TPCA by failing to maintain a do-not-call list. (DE #22, Count I.) Section 227(c)(5) provides a private right of action on behalf of "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection. . . ." 47 U.S.C. § 227(c)(5). 47 C.F.R. § 64.1200(d) states that "[n]o person or entity shall initiate any call for

telemarketing purposes to a *residential* telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity." 47 C.F.R. § 64.1200(d) (emphasis added).

The Foresters Defendants argue that the Section 227(c)(5) claim must be dismissed because the Complaint fails to allege that the telephone numbers on which Plaintiff allegedly received the calls at issue were residential telephone numbers. Plaintiff responds that he adequately pled that the calls were made to a residential line because he "only uses a cell phone," and "that is the only type of telephone [he] had in use at the time at [his] place of residence." (DE #64 at 2.) "The Court may consider additional facts alleged in the response to a motion to dismiss if the facts are consistent with the allegations of the complaint." *Baker v. Certified Payment Processing, L.P.,* No. 16-cv-03002, 2016 WL 3360464, at *2 (C.D. Ill. Jun. 1, 2016) (citing *Smith v. Dart*, 803 F.3d 304, 311 (7th Cir. 2015) (considering the facts alleged by the *pro se* plaintiff in letters filed after defendant filed a motion to dismiss), and *Early v. Banks Life & Cas. Co.,* 959 F.2d 75, 79 (7th Cir. 1992) (noting that "a plaintiff is free, in defending against a motion to dismiss, to allege without evidentiary support any facts he pleases that are consistent with the complaint, in order to show that there is a state of facts

within the scope of the complaint that if proved . . . would entitle him to judgment")). Because the facts proffered by Plaintiff are consistent with the Complaint, the Court will consider them. *See Baker*, 2016 WL 3360464, at *2 (considering plaintiff's proffer that the telephone number at issue was a residential number in response to defendant's motion to dismiss TCPA claim). Construing all reasonable inferences in favor of Plaintiff, he has alleged that the calls made to his cellular telephone numbers were residential telephone numbers. Therefore, the Foresters Defendants' motion to dismiss the TCPA Section 227(c)(5) claim is denied.

<u>Motion to Clarify</u>

Swets moves for clarification of the relief sought in the Harris Defendants' motion, specifically, the request to transfer the case to a federal district court in Florida. Swets, a resident of Indiana, indicates that he does not consent to the transfer of this case to Florida. Because the Court grants the Harris Defendants' motion to dismiss, their request to transfer the case to Florida is moot. Therefore, the Court denies Swets' motion for clarification as moot.

<u>CONCLUSION</u>

For the reasons set forth above, the Harris Defendants' renewed motion to dismiss is **GRANTED** (DE #26). Defendant Octavia Pugh's motion to dismiss is **GRANTED** (DE #31), Defendant Gil Swets'

motion to clarify relief sought is **DENIED AS MOOT** (DE #49), and Foresters Defendants' motion to dismiss is **GRANTED IN PART AND DENIED IN PART** (DE #57). The claim against FFSI for a violation of 47 U.S.C. § 227(b) based on a direct theory of liability is **DISMISSED WITHOUT PREJUDICE**. The Clerk is **ORDERED** to **DISMISS** the claims against defendants Angela Harris aka Angela Roach, Insurance Professionals of America, Inc., Octavia Pugh, and Foresters Financial Holding Company, Inc., for lack of personal jurisdiction.

DATED:  January 9, 2018                    /s/ RUDY LOZANO, Judge
                                           **United States District Court**