UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| CRAIG CUNNINGHAM,<br><br>Plaintiff,<br><br>v.<br><br>FORESTERS FINANCIAL SERVICES, INC., MICHAEL SAMAROO, MAHENDRA SAMAROO, AMERICAN INSURANCE GROUP, LLC, VIPCO ADVISORS, INC., JAY POLITI, NATIONWIDE SENIOR MARKETING, INC., KATIE BOLING, NICHOLAS POLITI, and NATIONWIDE SENIOR SERVICE INC.,<br><br>Defendants. | CAUSE NO.: 2:17-CV-77-TLS |

**OPINION AND ORDER**

This matter is before the Court on the Defendant Foresters Financial Services, Inc.'s Renewed Motion for Summary Judgment [ECF No. 119], filed on December 14, 2020. The Plaintiff Craig Cunningham has not filed a response and the time for doing so has passed. For the reasons set forth below, the Court GRANTS Foresters Financial Services, Inc.'s motion.

**PROCEDURAL BACKGROUND**

The Plaintiff Craig Cunningham, proceeding without counsel, filed a Complaint [ECF No. 1] on February 17, 2017, against 21 defendants, alleging violations of the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227, et seq. He then filed an Amended Complaint [ECF No. 22] a few months later to add more defendants. The Plaintiff generally alleges that he received numerous telemarketing calls that promoted life insurance and used pre-recorded messages. *See, e.g.*, Am. Compl. ¶¶ 31–33, ECF No. 22. Relevant to this motion, the Plaintiff

claims that Foresters Financial Services, Inc. (FFS) participated in the calls through its agents and that the calls were promoting FFS insurance products. *Id.* at ¶ 33.

FFS responded to the Plaintiff's complaint by filing a Motion to Dismiss [ECF No. 57], arguing that it could not be directly liable for any TCPA violations because it did not make the calls and that the facts did not support a claim for vicarious liability. *See* Mem. Supp. Mot. Dismiss 3, ECF No. 58. The Court granted FFS' motion as to the direct liability claim but denied it as to the vicarious liability claim. Jan. 9, 2018 Op. & Order 2, 16–21, ECF No. 66. The Court also dismissed the claims against other Defendants—Angela Harris, Insurance Professionals of America, Inc., Octavia Pugh, and Foresters Financial Holding Company, Inc.—for lack of personal jurisdiction. *Id.* at 2, 11–14. The case proceeded to discovery. *See, e.g.*, ECF No. 77.

On August 1, 2018, FFS filed its first Motion for Summary Judgment [ECF No. 80] on the remaining vicarious liability claim. The Plaintiff responded that he needed more time to conduct discovery about the nature of the relationship between FFS and the co-Defendants and to find evidence about the entity providing the life insurance products. Pl. Resp. Opp'n. 3, ECF No. 89.

While that motion was pending, the Plaintiff filed a Motion for Default Judgment [ECF No. 104] against seven Defendants: Michael Samaroo, Mahendra Samaroo, American Insurance Group, LLC, Nicholas Politi, Jay Politi, Nationwide Senior Marketing Inc., and Katie Boling.[1] The Plaintiff also filed a Motion to Dismiss [ECF No. 105], requesting that the Court dismiss nine Defendants without prejudice, and two Defendants with prejudice.

---

[1] Despite having obtained an entry of default against Nationwide Senior Service, Inc., *see* ECF No. 56, the Plaintiff did not include Nationwide Senior Service in its Motion for Default Judgment, *see* ECF No. 104. Similarly, VIPCO Advisors, Inc. has not responded in this case, *See* ECF Nos. 34, 100, but the Plaintiff has not sought an entry of default or taken any other actions against VIPCO.

The Court addressed these motions in two orders. *See* ECF Nos. 111, 113. First, the Court granted in part and denied in part the Plaintiff's Motion to Dismiss. June 25, 2019 Order 2, ECF No. 111. The Court dismissed without prejudice the following Defendants: Oracle Senior Insurance Group, Inc.; Jason Gsoell; Apptical Corp.; Glea Gsoell; Pinnacle Senior Insurance Group, Corp.; I Click Advanced Marketing Company; Axis Benefit Solutions, Inc.; Axis Advisory Group, Inc.; and Roderic Boling. *Id.* The Court also dismissed with prejudice Gilbert Swets. *Id.* The Court denied the motion as to Foresters Financial Holding Company because it had already been dismissed in a previous order. *Id.*

Second, in an Opinion and Order, the Court denied FFS' Motion for Summary Judgment. *See* May 20, 2020 Op. & Order 9, ECF No. 113. The Court found the Plaintiff's argument about needing more discovery well taken and decided to "reset a limited discovery period in order for Plaintiff to conduct the necessary discovery on vicarious liability." *Id.* It also denied without prejudice the Plaintiff's Motion for Default Judgment explaining that "the Court prefers to withhold consideration of default judgment as to the defaulted parties until the claims against non-defaulted FFS is adjudicated on the merits." *Id.*

After the limited discovery period finished, FFS filed its Renewed Motion for Summary Judgment [ECF No. 119] on December 14, 2020. It also filed a Notice of Renewed Summary Judgment Motion [ECF No. 122] as required by Northern District of Indiana Local Rule 56-1(a)(4) and *Timms v. Frank*, 953 F.2d 281 (7th Cir. 1992). This time, however, the Plaintiff did not respond, and the time for doing so has passed. *See* N.D. Ind. L.R. 56-1(b)(1) (providing for 28 days to file a response); *see also* N.D. Ind. L.R. 7-1(d)(5) ("The court may rule on a motion summarily if an opposing party does not file a response before the deadline.").

## SUMMARY JUDGMENT STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Supreme Court has explained that "the burden on the moving party may be discharged by 'showing'—that is, point out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "If the moving party has properly supported [its] motion, the burden shifts to the non-moving party to come forward with specific facts showing that there is a genuine issue for trial." *Spierer v. Rossman*, 798 F.3d 502, 507 (7th Cir. 2015). Within this context, the Court must construe all facts and reasonable inferences from those facts in the light most favorable to the nonmoving party. *Frakes v. Peoria Sch. Dist. No. 150*, 872 F.3d 545, 550 (7th Cir. 2017).

## FACTUAL BACKGROUND

The Plaintiff alleges that, in 2016, he received over 40 calls to his cell phone numbers. Am. Compl. ¶ 77. The calls contained a prerecorded message promoting insurance, which stated:

> Attention all seniors between the ages of 55 and 85 years of age who may not have life insurance or are concerned they may not have enough. You have been qualified for a plan that will never expire and premiums that will never go up. Press 1 now. There are no medical exams for this coverage and you can be insured as early as tonight.

*Id.* at ¶ 79. The Plaintiff claims that, when he was able to speak with an actual agent, he realized "they were all selling final expense life insurance by Forester's." *Id.* at ¶ 81. He further alleged that he "received a quote from Foresters and was offered insurance," and that an insurance application was submitted on his behalf. *Id.* at ¶¶ 55, 85. Accordingly, the Plaintiff claims that FFS violated 47 U.S.C. §§ 227(b) and (c)(5) of the TCPA by allowing its agents to sell its

4

insurance products through illegal telemarketing and paying those agents a commission. *See id.* at ¶¶ 100–06.

In support of its motion for summary judgment, FFS filed an affidavit from George Karris, FFS' Senior Vice President of Business Operations. Def. Ex. D, ¶ 2, ECF No. 121-4. Mr. Karris explains that FFS is a New York corporation with its primary office in New York. *Id.* at ¶ 3. FFS operates as a "broker-dealer that effectuates securities transactions on behalf of its customers," as well as maintains investment accounts. *Id.* at ¶ 5. FFS is also a licensed insurance agency that has independent contractors working as "insurance producers for more than one insurer that underwrites, manufactures, and issues life insurance products and annuities." *Id.* at ¶ 6. However, Mr. Karris states that FFS is not a life insurance company and does not underwrite or issue life insurance products, manufacture life insurance products, or enter into life insurance contracts. *Id.* at ¶ 7.

In conducting a search of FFS records, Mr. Karris determined that two individuals who spoke on the phone with the Plaintiff—Gilbert Swets and Octavia Pugh—were not independent contractors or appointed agents of FFS, nor did they have "any contractual or other relationship with FFS." *Id.* at ¶ 8. He further confirmed that there was no record showing that the Plaintiff submitted an application to FFS for a life insurance product. *Id.* at ¶ 9.

Additionally, while discovery was reopened, FFS submitted requests for admission, interrogatories, and requests for production to the Plaintiff. *See* ECF Nos. 116–18. The Plaintiff mostly responded to the interrogatories and requests for production by deferring to call recordings that he supposedly attached to his responses. *See generally* Def. Ex. A, ECF No. 121-1; Def. Ex. B, ECF No. 121-2. However, based on correspondence between the parties, it appears the call recordings were never produced. *See* Def. Ex. F, ECF No. 121-6; Def. Ex. G, ECF No.

121-7. The Plaintiff also admitted that he never paid any money to FFS or any of its co-Defendants. Def. Ex. A, ¶ 10.

## ANALYSIS

The TCPA was passed "in order to protect consumers by regulating telemarketing communications and prevent cost-shifting of advertising costs." *Warciak v. Subway Rests., Inc.*, 949 F.3d 354, 356 (7th Cir. 2020). Under the TCPA, it is unlawful for a person, without prior express consent, "to make any call . . . using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii). The statute provides a private right of action for any violations of that provision. *See id.* § 227(b)(3). It also provides a private right of action when a person has "received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of regulations under this subsection." *Id.* § 227(c)(5).

Under the statute, a plaintiff can rely on "federal common-law principles of agency" in order to hold a party vicariously liable for any violations. *Warciak*, 949 F.3d at 356 (quoting *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 168 (2016)); *see also In re Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574 (2013). Courts often look to the Restatement of Agency, which defines agency as "the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." Restatement (Third) of Agency § 1.01 (2006); *see Opp v. Wheaton Van Lines, Inc.*, 231 F.3d 1060, 1064 (7th Cir. 2000) (noting that federal common law accords with the Restatement of Agency). Common theories of agency—including actual authority, apparent authority, and

ratification—provide the means of establishing a vicarious liability claim under the TCPA. *See Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 587 (7th Cir. 2021).

The Plaintiff first relies on actual authority, which "requires that at the time of an agent's conduct, 'the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act." *Id.* (quoting Restatement (Third) of Agency § 2.01). To establish actual authority, the Plaintiff needs to show there was (1) a principal/agent relationship, (2) the principal controlled or had the right to control the agent's conduct, and (3) the conduct fell within the scope of the agency. *Id.* The evidence FFS provides undermines the central element of actual authority—i.e., the existence of a principal/agent relationship. As stated by Mr. Karris in his affidavit, FFS had no relationship, contractual or otherwise, with the insurance agents that spoke with the Plaintiff. He also explained that FFS is not an insurance company and does not offer the types of insurance products that were being marketed. Based on this understanding, it is not clear how (or why) there would be an agency relationship between FFS and the callers selling life insurance. Since the Plaintiff did not present evidence to rebut this argument or show an agency relationship, his claim of actual authority does not survive.

Next, the Plaintiff alleges that the callers had apparent authority to sell insurance on behalf of FFS. "Apparent authority exists when a third-party reasonably relies on the principal's manifestation of authority to an agent." *Warciak*, 949 F.3d at 357 (citing *Am. Soc'y of Mech. Eng'rs v. Hydrolevel Corp.*, 456 U.S. 556, 565–74 (1982)). This requires a principal to "speak, write, or otherwise act toward a third party," such that the third party would reasonably believe the principal consented to the agent's actions. *See Bridgeview Health Care Ctr., Ltd. v. Clark*, 816 F.3d 935, 939 (7th Cir. 2016). FFS argues that there is no evidence showing that it took any action toward the Plaintiff, especially considering it does not offer the products being sold.

7

Again, the Plaintiff did not counter this argument with evidence. He seems to suggest that apparent authority exists because the callers were purporting to market FFS insurance. *See* Am. Compl. ¶¶ 72–76; Def. Ex. A ¶ 4. But these callers were the alleged agents of FFS, so any statements made by them are insufficient to establish apparent authority. *Warciak*, 949 F.3d at 357. And further, assuming FFS products were being marketed, that cannot be the sole ground for liability. *Cf. Helping Hand Caregivers, Ltd. v. Darden Rests., Inc.*, 900 F.3d 884, 888 (7th Cir. 2018) (explaining that, under the TCPA's fax provision, an entity will not be strictly liable simply because its products were being advertised). Given the lack of evidence supporting the Plaintiff's theory of apparent authority, FFS cannot be held vicariously liable on this basis either.

The Plaintiff finally tries to establish vicarious liability through ratification. Ratification occurs when a party affirms "a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority." Restatement (Third) of Agency § 4.01(1); *see Toney v. Quality Res., Inc.*, 75 F. Supp. 3d 727, 745 (N.D. Ill. 2014); *Smith v. State Farm Mut. Auto. Ins. Co.*, 30 F. Supp. 3d 765, 779 (N.D. Ill. 2014). An act is ratified when the party manifests assent or otherwise engages in conduct that would reasonably imply consent, such as by knowingly accepting the benefit of an agent's action. *See* Restatement (Third) of Agency § 4.01(2) & cmt. g. Like the other theories, FFS highlights a lack of evidence showing that it took any action in relation to the calls being made. FFS also offers evidence that there is no record of the Plaintiff ever applying for an FFS life insurance product, and the Plaintiff admitted that he never paid money to FFS or the co-Defendants. Given this evidence, it appears FFS never accepted any benefit from the telemarketing calls and there is nothing else to indicate it manifested assent to the calls generally. *Cf. Toney*, 75 F. Supp. 3d at 745–46 (dismissing a

8

ratification theory because the plaintiff did not allege that the defendants "accepted any benefit that stemmed from" the calls). The Plaintiff's theory of ratification fails.

Because the Plaintiff did not respond to the motion for summary judgment, the Plaintiff has not offered any evidence to show an agency relationship between FFS and the callers. Once FFS showed there was an absence of evidence supporting a vicarious liability claim, the burden was on the Plaintiff "to come forward with specific facts showing that there is a genuine issue for trial." *Spierer*, 798 F.3d at 507. Since he failed to do so, the Court grants summary judgment in favor of FFS.

## CONCLUSION

For the reasons set forth above, the Court hereby GRANTS the Defendant Foresters Financial Services, Inc.'s Renewed Motion for Summary Judgment [ECF No. 119]. The Court DIRECTS the Clerk of Court to enter judgment in favor of the Defendant Foresters Financial Services, Inc. and against the Plaintiff Craig Cunningham.

As noted in the Court's May 20, 2020 Opinion & Order [ECF No. 113], now that the case is resolved as to FFS, the Plaintiff is granted leave to refile a motion for default judgment against any Defendants for whom there has been an entry of default. Additionally, the Plaintiff is granted leave to file any other motions related to the Defendant for whom there has not been an entry of default. The Plaintiff is granted up to and including April 11, 2022, to file any such motions.

SO ORDERED on March 8, 2022.

s/ Theresa L. Springmann
JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT
